In the Matter of the Estate of MARTIN WANNER, Deceased.

Surrogate's Court, Kings County, March 8, 1933.

*Harry M. Feintuch,* for the petitioner.

*J. Gerard McLaughlin,* for the respondent.

WINGATE, S.   It would be difficult to imagine a more sorry and unconvincing showing than that of the present accountant in his efforts to justify his acts in the administration of this estate.   No vouchers or records have been produced to substantiate his alleged expenditures and there is only his own unsupported and evasive testimony to indicate that he has not personally pocketed all the assets of the decedent which came into his hands.   It is more than possible that the objecting parties would have laid greater stress on this condition were it not for the testimony finally elicited from him that the greater part of the missing assets amounting to $5,162.84 was paid over by him to the estate of his mother, of which he is also the fiduciary, and in which it may be more convenient to bring him to book for his acts.

The present objections are chiefly directed to his failure to account for three bonds of $10,000 each, of the Central Railroad Company of New Jersey, the Kingdom of Great Britain and Ireland and the Cuba Cane Sugar Corporation which belonged to the decedent and were admittedly in the hands of the accountant prior to the death of the testator.   The accountant attempted to justify his retention of them on the ground that they were given to him by the decedent on or about September 27, 1922.

In order that an accurate picture of the entire situation may be obtained, it should be noted that at the time of this alleged gift, the decedent was approximately seventy-eight years of age.   In 1918 he returned to this country from South America in extremely poor mental and physical condition, suffering from bodily pains and hallucinations.   In the spring of that year he was ordered to be committed to Kings Park State Hospital, but was actually confined in a private hospital for the insane at Flushing. His case was diagnosed as general paresis after the obtaining of a four plus spinal fluid Wasserman test.   He was also a confirmed

drug addict. In spite of the protest of consulting physicians, he was paroled from the insane hospital in Flushing and returned to the home of his daughter where he remained until February 15, 1920, under constant treatment. During this period he apparently succeeded in securing considerable quantities of narcotic drugs from various sources. In spite of the fact that his physician "advised the family that the patient was progressively and incurably insane, and that he should not be permitted to travel alone for his own safety and for the safety of the public," he went to Salina, Kan., where he resided until the time of his death with a woman who was "able to procure and administer to the patient all of the morphine" he desired.

This somewhat astounding recital of the physical and mental condition of the decedent at about the time of the alleged consummation of the gift was not elicited from witnesses adverse and hostile to the accountant in this proceeding but is contained in his own written statement, dated October 8, 1922, slightly over a week subsequent to the date on which this accountant claims that the decedent made the gift of these $30,000 of bonds to him.

One further fact is of particular relevance in this connection. The decedent died on August 23, 1925. On September 12, 1925, the present accountant petitioned this court for the probate of a will dated June 7, 1917, and of certain codicils. Objections were interposed to the latter on the ground of lack of testamentary capacity. The issues proceeded to trial and resulted in the probate of the will and the rejection of the codicils. The findings of the court respecting the latter were as follows: " That at the time of the execution by said decedent of said papers bearing date the 18th day of May, 1921, and the 19th day of February, 1920, and the 4th day of October, 1922, and on said days, the said decedent Martin Wanner was not competent to execute the same.

" That on the 22nd day of April, 1918, the said Martin Wanner, the decedent, was committed to a licensed institution in the State of New York as insane pursuant to an order of the Kings County Court, State of New York, dated the 22nd day of April, 1918, and that said mental incapacity was of a progressive and incurable nature and existed and continued from the date of said order up until the time of the death of the said decedent."

On this demonstration of facts which the accountant is not only estopped to deny, but which, in large measure, he, himself, has personally demonstrated, the language of the Court of Appeals in Riggs v. American Tract Society (84 N. Y. 330) becomes pertinent. The court there says (at p. 335): " In substance it is that Ira Riggs in his life-time was of unsound mind, and while in that

condition transferred to defendant by gift or contract several sums of money which it still holds, and refuses to return. Now upon that concession the learned counsel for the defendant has failed to raise a doubt that Ira Riggs, if living would have a right to reclaim the money or, he being dead, that his representative may do so. Indeed the contrary can be maintained only by overthrowing the elementary principle of the common law, which renders a gift or contract invalid unless the mind goes with the act, and this, whether the actor is without mind, or of unsound mind, or of a mind not possessed of itself, as under duress. Of course if the plaintiff stood only on the fact of transfer, sanity at the time alleged would be presumed, and the plaintiff have the burden of showing the contrary. Now it is otherwise. The conceded fact takes the place of proof, and renders it unnecessary."

The determination against the accountant need not, however, be based on the unquestionable insanity of the decedent at the time of the alleged gift. Since the testator admittedly owned the bonds in question during his lifetime, the claim of the accountant that they were given to him, casts the burden of proof upon the latter that all the prerequisites to a valid gift met with full compliance. (*Matter of Housman*, 224 N. Y. 525, 526; *Matter of Davis*, 128 Misc. 622, 623; affd., 222 App. Div. 846; *Matter of Booth*, 224 id. 363, 365.) This burden he has failed to sustain.

It was demonstrated that an agreement embodying a gift of some undetermined bonds was drawn up, but this was not delivered. On the contrary, it was left in the hands of the attorney to await further advices from the decedent, and was held subject to his order in the interval. Instead of giving the requisite instructions for its completion, he commanded its destruction and it was destroyed pursuant to his desire. He then retained an attorney for the purpose of obtaining a return of this property which for some time previous had been in the possession of the accountant. This was not taken into court but the inference is strong that the failure to do so was caused by the actions of this accountant or his mother in laying a Federal narcotic charge against him. Aside from the decedent himself, only two persons were acquainted with the facts, namely, this accountant and the attorney, Mr. Raymond. Whereas the latter admitted bias against the accountant, his general conduct and manner of testifying inclines the court, as the trier of the facts, to attach infinitely greater credibility to his testimony than to the evasive and at times wholly untruthful evidence of the accountant.

In the opinion of the court, if the testator had sufficient mentality to make a gift on September 27, 1922, which is more than

doubtful, the most that can be said is that on that date he intended to make a gift to the accountant, but altered his design before consummating it.

In the objection respecting the alleged failure of the accountant to charge himself with interest on moneys of the estate in his hands, the burden was on the respondent. (*Matter of Taft*, 143 Misc. 387, 389; *Matter of Shafran*, Id. 754, 759; *Matter of Richman*, 142 id. 103, 109.) This burden he has failed to sustain and the objection must be overruled in this proceeding although it may become pertinent when the present petitioner comes to account in the estate of his mother.

The credit claimed in the account for traveling expenses to which objection is made will be allowed to the extent of $650. The item of $360 for use of the accountant's own automobile for an estimated distance of 4,500 miles at a surmised cost of eight cents a mile for trips between his home and the city, is disallowed.

In view of the determination that no valid gift of the Central Railroad, United Kingdom and Cuba Cane bonds was made to the petitioner, and the admitted fact that they were in his possession, he is chargeable with their value. No testimony on this subject has been adduced, wherefore, if the parties are unable to agree thereon, the matter may be brought on for further hearing on this question.

Proceed accordingly.