In the Matter of the Estate of MAX GREENBERG, Deceased.

Surrogate's Court, Kings County, February 18, 1936.

*Gustav Nadel* [*Charles Eno* of counsel], for the executrix, Rose Greenberg.

*Miller, Paul & Placer* [*George J. Gruenberg* and *S. Frederick Placer* of counsel], for the objectant to the account, John Greenberg, as administrator of Maurice Greenberg, a creditor.

WINGATE, S.  The only issue in this contested accounting which was litigated before the referee, Walter Jeffries Carlin, Esq., is raised by the objection of certain creditors to the failure of the accounting widow-executrix to include in the assets of the estate the proceeds of a certain check for $2,500 received by the decedent on the day before his death.

The testator died on January 11, 1930, as the result of a cancer. He had been confined to bed for about a year and a half, during which time he had wasted from about 160 pounds to 50.  On January 10, 1930, his brother-in-law secured from the attorney for his partner a check for $2,500 payable to the order of the decedent.  This was indorsed by the widow in the name of the decedent and deposited by this brother-in-law, who was, of course, her own brother, to her credit in a bank in Connecticut.

The widow-executrix did not appear as a witness on the hearings, but the position of her counsel in relation to the transaction is obviously consonant with her affidavit made in the transfer tax proceeding in which, under the heading " Gifts, grants and conveyances within two years prior to decedent's death," there

appears: "January 10, 1930, in the form of check delivered by decedent to Rose Greenberg, $2,500."

Since it is admitted on the record that a check for this sum was the property of the decedent on the day before he died, and since the accountant in her own affidavit submitted in the tax proceeding has elected to rely on a gift to her by the decedent, to establish its devolution to her, it is obvious that her success on the issue must depend on the demonstration of the legal essentials for the effectuation of a valid gift *inter vivos* or *mortis causa*.

Whereas, in view of the demonstration of the record, the question is of little or no present moment, the court is unable to concur in the position of the learned referee that the burden was imposed on the objectant of establishing by negative proof that the check was not given by the decedent to the widow. The contrary is the case. A gift is never presumed. (*Nay* v. *Curley*, 113 N. Y. 575, 578; *Matter of Williams*, 157 Misc. 458, 460.) It is entirely true in the ordinary case that the burden rests upon an objector to demonstrate that assets not included in an executorial account were improperly omitted therefrom. (*Matter of Wanner*, 146 Misc. 722, 726; *Matter of McCafferty*, 147 id. 179, 193.) This, however, does not apply in a case in which the executor, in his personal capacity, claims an asset formerly belonging to the decedent. This is, in essence, the assertion of a personal claim by the fiduciary, within the spirit if not, indeed, of the letter of section 212 of the Surrogate's Court Act, the burden of demonstration of which is upon the fiduciary who claims adversely to the estate. Such fiduciary will not be permitted to jeopardize the interests of his *cestuis que trustent* by a purely tactical maneuver whose purpose is merely to attempt to force them to demonstrate the substantially impossible. (*Matter of Gentry*, 139 Misc. 759, 769.)

The court must also note its dissent from the position of the referee in refusing to admit into evidence the fact that in the transfer tax proceeding in this estate the executrix had asserted the devolution of the check to her as a gift. This was a fact of which he could have taken judicial notice. (*Matter of Surpless*, 143 Misc. 48, 50; *Matter of Morningstar*, Id. 620, 623; *Matter of Blake*, 146 id. 780, 781, 782; *Matter of Goldowitz*, 153 id. 182, 184.) *A fortiori*, it was admissible in evidence.

The essential demonstrations for the establishment of a gift have received repeated judicial recognition. So far as presently pertinent, they include, *first*, mental capacity of the donor (*Riggs* v. *American Tract Society*, 84 N. Y. 330, 335; *Matter of Wanner*, 146 Misc. 722, 725); *second*, an intention to make a gift (*Matter of Dunne*, 136 Misc. 250, 251; affd., 232 App. Div. 831; *Matter*

of *Powell*, 148 Misc. 53, 54); *third*, completed delivery (*Matter of Vitelli*, 139 Misc. 165, 166, 167; affd., 233 App. Div. 867; *Matter of Hayes*, 153 Misc. 233, 234); and *fourth*, acceptance by the donee (*Matter of Pastore*, 155 Misc. 247, 255).

In the case at bar the presence of the first two noted essentials is violently contested. On the question of mental capacity, the testimony of the widow in the earlier Supreme Court action is in somewhat striking conflict with the decision of the referee. She then testified that " sometimes only " during the decedent's last two weeks of life did he understand what he was talking about. " He was drugged too much." He " was not at all " able to transact business. She was " quite sure " that he was " not at all " in " a mental condition so he could transact business." He " was not in a fit condition to do anything." " His condition became worse and worse as the days in January passed." " During the last few days of his life he really did not understand much at all." The only counteracting showing of the record, if it may be so termed, is the testimony of Benjamin Barondess, whose testimony was extremely vague as to dates, and, when taken in its most favorable aspect, was merely to the effect that on the few occasions when he saw the decedent the latter appeared in fairly good mental condition. He was not present at the time the check transaction took place.

This court would hesitate to disagree with the result of the learned referee in this connection in giving preponderant weight to the testimony of a witness whom he has had the advantage of seeing (*Matter of Enright*, 149 Misc. 353; *Matter of McNamara*, 138 id. 526, 529; *Matter of Rich*, 151 id. 852, 856; *Matter of Dreyer*, 153 id. 624, 625), and fortunately this course is unnecessary in the present instance, since, giving complete credence to all the testimony in the record, there is still a failure of compliance with the second essential to a valid gift noted in *Matter of Bolin* (136 N. Y. 177, 180), where it is said: " The evidence must show that the donor intended to divest herself of the possession of her property and *it should be inconsistent with any other intention or purpose.*" (Italics not in original.)

In the case at bar the learned referee has placed reliance for his result on general statements of the decedent, apparently made to his attorney in connection with the preparation of his will, that he desired to protect his widow because of the fact that he had used her household savings in his business. This he did by his will which bequeathed his entire property to her.

His statements in respect to the use of the money to be derived from the check in question, even if the testimony be given full credence, did not demonstrate any similar intention in this connection. His reported statement here was that " all the money he had in the house was already spent for doctors and medicines and nurses * * * ' now we haven't got a penny in the house and Mrs. Greenberg goes around the house and she don't know what to do.' * * * he needs money badly because he says they haven't got a penny; they owe a lot of money to the drug store and other places, and they need money, but they haven't got the money now." These statements are reported to have been made by him on the day before the check was received. When the check actually arrived, he directed his wife to indorse it, and said to her brother, " you try to get money for it," and to his wife: " Morris will attend to that: he will give you the money."

The only logical inference from this testimony is that the decedent, being pressed for funds by reason of his illness, desired to and actually did, obtain this sum for the purpose of meeting his obligations and naturally directed that it be intrusted to his wife for this purpose. Read in its entirety, there is no intimation in the record of an intention that this sum should become the absolute property of the wife  On the contrary, its purpose was the solution of obligations already contracted in consequence of his illness and to provide for future similar necessities. This definitely negatives the suggestion of any beneficial conveyance of the check or its proceeds to the widow. The money was merely intrusted to her for the purpose of making necessary expenditures and remained his, with the result that it is properly a part of his estate. It is quite improbable that the decedent, at a time when he did not have " a penny," was incapacitated and in debt, and had just succeeded in obtaining some money for his immediate needs, intended immediately to wholly divest himself of all resources.

The court is accordingly unable to agree with the conclusion of the learned referee and sustains the objection to the account.

Enter decree on notice.