Maurice D. Isenbergh, S.
The issue in this discovery proceeding instituted by the preliminary executor of the estate of the deceased under section 205 of the Surrogate’s Court Act is the ownership of moneys deposited in five bank accounts approximating the sum of $45,000. All of these deposits were in the name of the deceased, Catherine Harter, at the time of her death on June 28, 1963, and it is undisputed that these moneys originally belonged to her. The preliminary executor claims the moneys as estate property and seeks herein to recover possession of the account passbooks from Marjorie Zabriskie, the respondent herein, a cousin of the deceased, who holds the books and asserts ownership to the moneys on deposit in the five accounts. Her theory is that she was given these moneys by the deceased on June 6,1962. A jury trial has resulted in a unanimous verdict upholding the alleged gift, and coming now before the court for decision are the executor’s two motions for dismissal made respectively at the conclusion of the respondent’s case and at the close of the whole case, and his motion to set aside the jury’s verdict as contrary to the weight of evidence, on which motions decision was reserved. It seems quite apparent that both motions for dismissal which were intended to have the case taken away from the jury should be and they are denied. The motion to set aside the verdict asks the court to grant judgment for the executor or to order a new trial pursuant to CPLR 4404 and calls for a reference to the law and the facts upon which the court is basing its decision.
There are certain essential elements of a valid gift inter vivos which are well understood and are not subject to dispute, among which are donative intent on the part of the donor and acceptance of the gift by the donee (Matter of Kelly, 285 N. Y. 139; Matter of Van Alstyne, 207 N. Y. 298; Beaver v. Beaver, 117 N. Y. 421; Matter of Greenberg, 158 Misc. 446). These elements must always be present since a gift is never presumed and the evidence must show that it was the intention of the donor to divest herself of her property and it should be inconsistent with any other intention or purpose (Matter of Bolin, 136 N. Y. 177). The burden of sustaining a claim of gift rests upon the party claiming the gift (Matter of Kelly, supra, p. 150; Matter of Housman, 224 N. Y. 525; Matter of Kassebohm, 286 App. Div. 932, 4 A D 2d 804, affd. 4 N Y 2d 941). The court said in Matter of Kaminsky (17 A D 2d 690, 691): “ The rule long ago announced and often reiterated is that ‘ He who attempts to establish title to property through a gift inter vivos as against the estate of a decedent takes upon *1029 himself a heavy burden which he must support by evidence of great probative force, which clearly establishes every element of a valid gift (Matter of O’Connell, 33 App. Div. 483; Matter of Kimmey, 273 App. Div. 142; see, also, Rosseau v. Rouss, 180 N. Y. 116, 121.) ”
Counsel for Marjorie Zabriskie recognized that the burden of proof rested upon her by demanding the right to open and close the case before the jury, a right which she was accorded. Her principal witness was her husband, George Zabriskie. He testified in substance that on June 6, 1962, the day the alleged gift was made, he and his wife and his attorney went to Albany Medical Center where Mrs. Harter was a patient. The latter instructed them to go down to the bank where she had her safe-deposit box and to bring back the five savings books which she had in that box. The witness and his wife went to the bank and after clearing with the bank official in charge concerning their right of access, they entered the box at 2:30 p.m. They obtained the bankbooks and returned to the hospital whereupon Mrs. Harter asked Mr. Zabriskie to read the amount in each book and the name of the bank. When he had finished reading, he put the books in Mrs. Harter’s hand who reached across to Marjorie Zabriskie and put the books in her hand, saying: “ Marjorie, I want you to have the bank books. You’re my flesh and blood. Take them home with you ”. Mrs. Harter also said: 1 ‘ I have the Hudson Savings Bank, Rensselaer Savings Bank and sufficient funds in the strong boxes at home for all — 'for ample needs for myself”. Such declarations made by the deceased when she handed the bankbooks to Marjorie Zabriskie are not inconsistent with an intention to deliver the books for purposes of mere safekeeping and do not tend to sustain the burden of proof as to donative intent. Construing such declarations most favorably to Mrs. Zabriskie, one could say only that the intention and purpose of the delivery was not clear and unequivocal.
Subsequent acts and statements of Mrs. Zabriskie become important under these circumstances in endeavoring to ascertain the intention of the deceased. The record shows that twice Mrs. Zabriskie had the interest added on the passbooks but she did not include the interest on these accounts in her income tax returns, nor did she ever request the banks to transfer the accounts to her name. On June 30, 1962, she sent a letter in her own handwriting to an official of the bank where Mrs. Harter maintained her safe-deposit box, an excerpt therefrom follows: “ I fear if these 2 strong boxes are opened with these keys, the key to her safe deposit box at the bank will *1030 be discovered and since Mrs. Harter has entrusted her bank books to me which she requested the day I had access to her safe deposit box at the bank 6/6. She insisted she wanted me to take them home * * *. So again I asked my cousin when we were there 6/28 if I should turn them over to Mr. Connors and she said no I want you to keep them for me ”.
Later, September 4, 1962, her husband wrote to an officer of one of the banks stating in part the following: “ On August 28 my wife Marjorie Zabriskie and I discussed with you, her cousin Mrs. Catherine Harters account No. 169960 to the effect that Mrs. Harter has entrusted her bank books to my wife which are in her possession. This action was taken as an alert to you, were you notified, the book was lost, or a signed affidavit was presented, to request a withdrawal on this account, which is simply a precautionary measure to protect Mrs. Harter, who has been very ill since last January, which Dr. Burton Wilcke of Rensselaer, N. Y., will confirm.
“We followed the above procedure with four other Banks in Albany, all of which were grateful to us for the notification and informed us, no new book would be issued to. any one who made a request, nor could a withdrawal be made without the book.”
Then on January 18, 1963, her attorneys wrote a letter to each of the five banks the first paragraph of which states: “ Please be advised that the pass-book to the above numbered account was transferred from Mrs. Harter to her cousin Mrs. Marjorie Zabriskie of 63 East Clinton Avenue, Bergen-field, New Jersey, in August of 1962, for safekeeping”. In her letter Mrs. Zabriskie refers to the bankbooks as ‘ ‘ entrusted ’ ’ to her, and she relates a conversation with the deceased as to whether or not the books should be turned over to Mr. Connors to which the deceased replied “no I want you to keep them for me ”. This letter strongly indicates that the bankbooks were delivered to her for safekeeping and that she accepted them for the same purpose. The letter written by her husband is much in the same vein, that Mrs. Harter has “entrusted” her bankbooks to his wife and the bank was alerted to a request for a withdrawal as a precautionary measure to protect “ Mrs. Harter ” and that this procedure had been followed with four other banks. Also of great significance is the letter written by Mrs. Zabriskie’s attorneys to each of the five banks stating in positive language that the passbook was transferred from Mrs. Harter to Mrs. Zabriskie for 1 ‘ safekeeping ”. It seems incredible that she would have allowed her attorneys to state on her behalf that she held the books *1031 merely for safekeeping if in fact she claimed ownership of the moneys represented by the passbooks. All of these letters were written long after the making of the alleged gift on June 6,1962, by which time Mr. and Mrs. Zabriskie had ample opportunity to reflect upon the transaction. Relating these actions and statements to the delivery of the bankbooks to Mrs. Zabriskie on June 6, 1962, it becomes much clearer that such delivery was for safekeeping and not to transfer title to the moneys and that it was so understood by all present on that occasion and so accepted by Mrs. Zabriskie.
Remaining for consideration is the effect of the testimony given by Dorothy Marie LaCloux, Director of Social Service in Albany, called as a witness for Mrs. Zabriskie. This witness testified that on the day of the alleged gift, June 6, 1962, she and Mrs. Zabriskie went to Mrs. Harter’s room in the hospital. Their purpose was to persuade Mrs. Harter to sign a power of attorney so that moneys could be withdrawn from the bank to repay the Welfare Department for money advanced to Mrs. Harter. The latter had three keys, one for the vault and two others for some use unknown to the witness. The witness left the room for about half an hour and does not know what happened during that interval. When she returned, the witness, Mrs. Harter and Mrs. Zabriskie were the only persons in the room and Mrs. Harter, having the bankbooks in her hand, said to Mrs. Zabriskie, ‘ ‘ I want you to have these. I want you to take care of my things because you’re the only cousin I have. You’re my flesh and blood, I want you to have them ”. Mrs. Harter then handed the bankbooks to Mrs. Zabriskie. These declarations do not clearly demonstrate an intention on the part of Mrs. Harter to effect an immediate and irrevocable transfer of the money on deposit in the five banks. Mrs. Harter’s statement that she wanted “ my things ” to be taken care of by her cousin, rather, perhaps, than by a non-relative indicates that the delivery was for safekeeping and not to effect a gift. The most that may be claimed for these declarations is that the purpose of the delivery is neither clear nor unmistakable.
Although Miss LaCloux’ testimony was doubtless intended to supplement or corroborate the testimony of Mr. Zabriskie it actually has the contrary effect. Assuming that the delivery as testified to by Mr. Zabriskie was first in the order of events, as the proof seems to indicate, such delivery necessarily had to be vitiated and the books redelivered to Mrs. Harter before she could deliver them to Mrs. Zabriskie in the presence of Miss LaCloux as testified to by Miss LaCloux. These were two *1032 separate occasions on the same day and Miss LaCloux and Mr. Zabriskie were not in the room at the same time on either of these occasions. Thus her testimony tends to weaken rather than support Mr. Zabriskie’s version of the alleged gift.
The proofs adduced granting the most favorable view to Mrs. Zabriskie render the existence of donative intent and acceptance by the donee pursuant to that intention at the least doubtful and uncertain. This is not in accordance with the requirement that the intention to make a gift must be established by clear and convincing testimony. Indeed, the greater weight of the evidence points toward safekeeping as the purpose for decedent’s delivery of the bankbooks, rather than for the purpose of a gift. The respondent, Marjorie Zabriskie, having failed to sustain her burden of establishing a completed gift by clear convincing and satisfactory evidence, it is the opinion of this court that the verdict of the jury should be set aside, as contrary to the weight of the evidence and a new trial had in the interests of justice.