Orrin G. Judd, S.
This case presents the recurrent question of Totten Trust revocation in the form of a proceeding for the construction of decedent’s will.
Decedent left assets of about $30,000, of which approximately $12,000 was in his ovm name and approximately $18,000 in Totten Trust accounts for the benefit of his younger brothers Arthur and Daniel.
His will, after directing payment of funeral and administration expenses, gave the residuary estate to his brothers in equal shares per capita.
The attorney who prepared the will in 1958 testified that the intention of the decedent had been to distribute the proceeds of the Totten Trust accounts, as well as his other assets, in equal shares among all his brothers. The attorney advised him to *948 go to the banks and have the bankbooks changed, but the decedent refused to do it, “because it would offend the two brothers, that he trusted them very highly.” He was then advised to insert a reference to the Totten Trusts in his will, but said that “ he didn’t want to put it in the will for the reason that it would also offend the brothers ’ ’, and that they knew his intention to have it divided equally among them. Thereupon the attorney told him he might make an oral revocation, and the decedent stated, “I revoke the bank books in trust for my two brothers and I want it to go to all my brothers.” Two or three weeks later, when the will was executed, the attorney pleaded with decedent to insert the revocation in the will, but said, “I couldn’t argue with him.” The will, although not mentioning the Totten Trusts, expressly included the contents of a bank vault in the joint names of decedent and one of his younger brothers.
The bankbooks remained unchanged. Between the time of the will and the time of his death, decedent made 20 deposits in the account in trust for his brother Arthur and 9 deposits in the account in trust for his brother Daniel.
The attorney’s accuracy of recollection of 1958 events was weakened on cross-examination by inaccurate “embroidery” which he added to his original testimony. He described the testator as having told him that the two brothers who were beneficiaries of the trust accounts “were sort of the brains or the elders of the family.” In fact, they were the youngest of seven sons, except for the objectant brother; and one of them had been a restaurant helper and a shipping clerk, while the objectant brother was a doctor. The attorney stated that he was told to put in the will that everything the decedent owned, including the bank accounts, should go to all his brothers; but these were not the instructions which he followed or which he described on direct examination. The attorney claimed that he prepared a written memorandum of his conversations with decedent, but could not produce it.
Totten Trusts have been given special protection by New York courts, as a sort of “ poor man’s will.” A provision in a mortgage or other contract that any amount unpaid at death shall pass to a specified beneficiary is invoked as a testamentary disposition (McCarthy v. Pieret, 281 N. Y. 407). In contrast, the Court of Appeals held in Matter of Totten (179 N. Y. 112, 126), that any balance in a savings account would pass to the trust beneficiary if the depositor predeceased “without revocation, or some decisive act or declaration of disaffirmance.” Surrogate Rubenstein pointed out that there *949 are at least four methods of revoking a Totten Trust hy changing the beneficiary, by the terms of a will, by an unequivocal act or declaration, or by inadequacy of estate assets to satisfy bequests and charges (Matter of Koster, 119 N. Y. S. 2d 2, 4-5).
Even if the attorney’s direct testimony be accepted, it does not constitute the sort of “decisive declaration” which is necessary to revoke a Totten Trust.
A mere general or residuary bequest, in the absence of any further feature, will not effect a revocation of a Totten Trust (Matter of Richardson, 134 Misc. 174, 180). This rule constitutes recognition that the “ poor man’s will” should not be subject to alteration without at least some of the safeguards which the law places on revocation or amendment of true wills. To prevent wills from failing of their express purpose, courts have sometimes permitted them to revoke Totten Trusts by implication, but subject to the restriction that the evidence of revocation of the trust must be “ decisive ”, “ convincing ”, or “unequivocal” (Matter of Totten, supra; Matter of Ginsburg, 27 Misc 2d 586; Matter of Harter, 43 Misc 2d 1027; Conry v. Maloney, 5 N. J. 590, 594 [applying New York law]). The alleged oral revocation could be considered decisive only if regarded in isolation, apart from the rest of decedent’s acts and statements. The decedent was informed of definite ways in which to revoke the trusts, by a change of the bankbooks or by a statement in his will, and rejected these in favor of the alleged oral revocation. This is an equivocal act at best.
Petitioner’s counsel has analyzed the cases with thoroughness and skill, but none of them goes far enough to sustain his position here. Matter of Athanasiou (24 Misc 2d 12), which is petitioner’s principal reliance, invited the court to ‘ ‘ stretch ’ ’ for the protection of decedent’s purposes. There an illiterate man told his attorney that he had five bankbooks, and wanted the proceeds divided equally by will. The attorney did not know that some were Totten Trusts, and gave no advice on that subject. The decedent even took the draft of will to one of the banks to be assured that it would effect his purpose. There was no opposition to the result requested by the executors, the testimony being taken ex parte before a law assistant, and reported without comment on its credibility (Surrogate’s Ct. Act, § 32, subd. 9). Matter of Rodgers (374 Pa. 246) was a case where the assets would have been inadequate if the Totten Trusts were not invaded; reference to oral revocation was an alternative holding, and depended on clearer facts than here.
There is no injustice to petitioner in this case. One who prefers to rely on some moral obligation of his brothers instead *950 of setting forth his meaning in plain written words should not expect that he is thereby reinforcing the alleged moral obligation. On the other hand, sustaining petitioner’s position here would permit frail oral memory years later to overcome the clear terms of Totten Trusts.
The will is therefore construed not to revoke the Totten Trusts. Petitioner, having acted in good faith in raising the question, may have an allowance for counsel fees from the estate, but the court in its discretion will require respondents to meet their own counsel fees.