S. Samuel Di Falco, S.
The daughter of the decedent attempted to institute a proceeding under section 206-a of the Surrogate’s Court Act to compel delivery to her of certain savings bank passbooks which were in the decedent’s name, in trust for petitioner. The executor under the decedent’s will petitioned for a construction of the will and for a determination that the bank accounts and their proceeds were payable to him in order that he might discharge all debts and carry out the provisions of the will. Process on the daughter’s petition was never duly served and her petition was accepted as an answer and cross petition in the construction proceeding.
The will of Agnes Service contains only two paragraphs, in addition to the introductory material, the first of which reads: “I give to daughter, Charlotte Service, all my property, in trust, however, and direct that he pay to her the sum of twenty-five dollars per month during her life time.” The second paragraph nominated the attorney-draftsman as executor and trustee under the will. The decedent was a widow and Charlotte was her only child.
It is undisputed that the decedent had four Totten Trust accounts, in all of which her daughter was beneficiary. The accounts in American Irving Savings Bank, Union Dime Savings Bank, the Greenwich Savings Bank and Emigrant Industrial *400 Savings Bank aggregated $15,550 on June 27, 1964 (the day of decedent’s death). Since that time interest has been credited to three of the accounts. At present dividend rates, the accounts would produce more than $600 a year. The decedent owned 20 shares of stock of McKesson and Bobbins, 30 shares of what was described as Amerex Oil Development and an unspecified number of shares of Transcontinental Oil Company. Her tangible personal property is not described in detail, but it would appear to be not of substantial value. The obligations of the decedent at the time she made her will are not set forth in the record. The largest debts specified in the petition relate to the decedent’s illness and hospitalization, and they cannot reasonably have been within her contemplation when she made her will.
Beading the decedent’s will against the background of surrounding circumstances, it cannot fairly be said that the provisions of the will manifest a clear intent to revoke and cancel the Totten Trusts. Modest as her assets were (outside the bank accounts), her obligations and the dispositions in the will were even more modest. If she actually had in mind the trust accounts, then her will directs payment of less than half the income of the bank accounts and it makes no disposition whatever of any of the corpus of her estate. The will makes more sense if read in the light of exclusion of the accounts rather than their inclusion.
What is lacking in the will itself is lacking also in the pleadings which formulate the issues. While the petition of the executor is, in form, one for construction of the will, the point in issue between the parties in reality is whether or not the decedent had revoked the tentative trusts. In support of the argument that she did revoke them, the attorney-draftsman was offered as a witness. He testified that he asked the testatrix, “What does your estate consist of”, and that she replied: “ I have money in the American Savings Bank, the Q-reenwich Savings Bank, the Dime Savings Bank and one other.” In answer to an inquiry respecting the form of the bank accounts, she said: “ They are in trust for my daughter, Agnes ” [smj. He further testified that he asked her: “Is it your intention by this will to cancel — to make those temporary trust funds ”, and again: “Is it your intent now to cancel those temporary trusts in the bank ’ ’, and that she replied in the affirmative to both questions.
There is no doubt that in construing a will, direct statements of intent by the testator to his draftsman are not admissible. (Matter of Smith, 254 N. Y. 283, 289; Matter of Powers, 85 *401 N. Y. S. 2d 607, 609; 9 Wigmore, Evidence [3d ed.], p. 229, § 2471; Richardson, Evidence [8th ed.], p. 580.) The reason for the exclusion, as Professor Wigmore points out, is not found in any prohibitory rule of evidence, but rather in ‘ ‘ the rule which prohibits setting up any extrinsic utterance to compete with and overthrow the words of a document which solely embodies the transaction.” (Id., pp. 229-230.) The exclusion of such oral declarations is particularly enforced when their effect would be to make the hearer the repository of the declarant’s testamentary program instead of having it expressed in the writing which is essential to a valid will. (Matter of Powers, supra; Matter of Salterini, 7 Misc 2d 497, 499.)
With respect to the revocation of Totten Trusts, there appears to be no settled rule excluding oral declarations of revocation. On the contrary, oral revocations have been recognized in several cases. The source of the law on this subject, Matter of Totten (179 N. Y. 112), did not discuss the ways in which revocation or disaffirmance could be manifested. It said merely: “In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor ” (p. 126; emphasis added). The Restatement discusses revocation by withdrawal of the money on deposit, by death of the benficiarv during the depositor’s lifetime, by express or implied disaffirmance in the depositor’s will, and by act of committee of an incompetent depositor. In respect of the manifestation of intention to revoke, it says only that “No particular formalities are necessary to manifest such an intention.” (Restatement, Trusts 2d, § 58, Comment c.) Professor Scott states the rule to be that “ the trust is revoked by any words or conduct on the part of the depositor indicating an intention to revoke it.” (1 Scott, Trusts [2d ed.], § 58.4, p. 492.) Thus there is nothing specific in any of these authorities on the matter of oral declarations of disaffirmance, their admissibility or their probative value.
In Rodgers’ Estate (374 Pa. 246) the Supreme Court of Pennsylvania decided that the depositor had accomplished the revocation of the tentative trust in two distinct ways: first, by her declarations of disaffirmance and, secondly, by the provisions of her will which could not reasonably be effectuated without resort to the trust account. With respect to the declarations, the court said (p. 251): “ [The scrivener] was permitted to testify to his conversations with the testatrix leading to the preparation of her will. This testimony was admitted over *402 the objection of the appellants, who contended that the will was clear and unambiguous and not subject to oral explanation. We agree with this contention of appellants and would exclude the testimony if it were offered only as explanation of the will * * * But, as above stated, the creator of a tentative trust has power to revoke it by oral declarations, and the testimony of testatrix’s attorney was clearly admissible to show her intention that the trust be revoked, entirely apart from any question of interpretation of the written will. ’ ’ In the discussion of the evidence, however, the court did not disclose any clear and direct declaration of disaffirmance. The attorney stated that he had suggested the creation of a testamentary trust, with authority for invasion of corpus, for the support and maintenance of Miss Rodgers ’ sister, who was infirm, mentally and physically. The testatrix (p. 252) “described the property which would be the subject of this trust ” including in her recital the statement: “ my money is on deposit at the Beneficial Saving Fund Society.” That is the deposit which was the tentative trust in question. Quite independently of that basis of decision, the court also ruled that the testamentary scheme of the will, under which her other assets would have been wholly inadequate, manifested an unequivocal intent to revoke the tentative trust. The one sister was beneficiary of both the bank account and the trust created by will.
In Walsh v. Emigrant Ind. Sav. Bank (106 Misc. 628, affd. 192 App. Div. 908, affd. 233 N. Y. 512), there were acts and declarations of the decedent, at and after the execution of her will, which were held to be competent evidence of disaffirmance. But here, too, quite independently of the acts and declarations, the court held that “ in order to carry out the provisions [of the will] it is essential to include in the assets of the estate the $3,000 in the disputed bank account ” (pp. 630-631).
Matter of Richardson (134 Misc. 174, 176) also involved a will and declarations of the testator to the draftsman that his “whole estate consists of just three bank accounts.” The will bequeathed the testator’s “ entire estate ” to a person other than the beneficiary of the account. Surrogate Wiugate ruled that the will alone did not amount to a revocation of the tentative trust, but that the declaration of the decedent did amount to a disaffirmance of the Totten Trust. “If it is to be considered as having been offered for the purpose of establishing an alteration or enlargement of the terms of the will”, said the Surrogate, “it was clearly inadmissible since the will on its face was unambiguous. * * * But it was not offered or received for that purpose. The issue in this proceeding was whether or *403 not the trusts had been revoked. ’ ’ Evidence of the oral declaration was held to be admissible on that issue, and the Surrogate decided that ‘ ‘ such acts and declarations are singularly identical on the facts with those presented in the Walsh case ” and that the decision in that case was “ controlling on this court on the facts here presented ” (p. 181). The one great difference between the two cases was that in the Walsh case the will was wholly inconsistent with the preservation of the tentative trust, while in the Richardson case, it was not. However, there is one point of similarity in all of these cases that requires attention. In each case the court made clear its respect for the rule which excludes oral declarations to enlarge, contradict or modify a written will, and in each case it accepted the oral declarations only as manifestation of an act of revocation and not as a key to the interpretation of the will. Yet in each of these cases, neither the act nor the declaration, in and of itself, could fairly be said to manifest a revocation of the trust except as that act or declaration gave greater scope to the terms of the will and thus put an end to one only because it was swallowed in the other.
Thus we see that in Matter of Richardson, the testator did not say in words or substance that he revoked the tentative trusts. All he said was (p. 176): “ My whole estate consists of just three bank accounts ’ ’, naming the banks. Divorced from the content of his will, that declaration would be without any significance whatever except as a description of what he regarded as his property. In Matter of Walsh, the act was holding three savings bankbooks in her hand, saying that they represented deposits of little over $5,000, and then proceeding to make bequests on that basis. In Rodgers’ Estate, the testatrix described the property which would go into the testamentary trust then under discussion, including in her description money on deposit in a named institution, a description which represents the Totten Trust. In all cases, what was received in evidence was taken to enlarge the terms of the will, although the door through which it was admitted had a different legend.
•Surrogate Collins made clear the difference between a direct, immediate, and decisive disaffirmance of a Totten Trust and a testamentary disposition which would operate as a future disaffirmance (Matter of Baquiche, 4 Misc 2d 614). In that case the depositor attempted to dispose of the trust accounts by an unattested letter which was plainly testamentary in character. It was ineffective as a testamentary disposition of property. Said the Surrogate (p. 615): “It would be, moreover, a distortion of its meaning to hold that it was intended by the deceased *404 in the alternative to constitute an unequivocal inter vivos revocation of the trust accounts. Plainly he entertained no such thought at the time he wrote the letter. If anything he had then in mind the preservation of the accounts so that they could be disposed of upon his death in the manner set forth in the defective testamentary paper.”
Matter of Athanasiou (24 Misc 2d 12) was decided by this court. There a testator established five trust accounts for four persons, a sister, two nephews and the widow of a nephew. The amounts of the accounts were not equal. The will bequeathed all property to the very same four persons, but in equal shares. The proceeding was not contested, with the result that evidence of the testator’s acts and declarations was received without objection. The nature of the acts and declarations is not discussed in the opinion, and hence it is of little value in the present discussion because it merely finds that the acts and declarations constituted probative evidence and that they amounted to a decisive disaffirmance. In Boyle v. Kempkin (243 Wis. 86) the acts and declarations of the decedent are not revealed, but it is clear that the bank account was only one of the assets of an express trust and that the decedent had the intent and purpose of revoking the entire trust.
The courts have generally maintained strict standards of revocation, and in many cases have ruled that the act or declaration relied upon was not of such a decisive character as to establish a disaffirmance of the tentative trust. (Matter of Stelma, 25 Misc 2d 234; Garlick v. Garlick, 53 N. Y. S. 2d 321; Matter of Ryan, 52 N. Y. S. 2d 502; Matter of Schiffer, 142 Misc. 518; Krewson’s Estate, 154 Pa. Super. Ct. 509.) Explicit revocation by will is not uncommon (Matter of Poma, 20 Misc 2d 671; Matter of Vetroock, 34 Misc 2d 1073), although revocation implied from the terms of the will or from the will as a whole, is more frequent. (Matter of Beck, 260 App. Div. 651; Matter of Ludwig, 207 Misc. 860; Revocation of Tentative Trust by Inconsistent Will, 42 Yale L. J. 141; Revocation of Tentative Trust of Savings Bank Account, Ann. 38 ALR 2d 1243; 1 Scott, Trusts [2d ed.], § 58.4, p. 493; 89 C. J. S., Trusts, § 88, subd. h, p. 909.) The number of cases where Totten Trusts have been held to be revoked by oral declarations alone, appear to be few. (See Ann. 38 ALR 2d supra, p. 1259; Scott, Trusts, supra, p. 492.)
Turning to the case at hand, it is patent that all of the declarations of the testatrix to her draftsman were intended to give to the text of the will a meaning which the text could not carry by itself. “Is it your intention by this ivill to cancel ’’ *405 the tentative trusts was the question put to her. True it is that a few minutes later, she was asked: “ Is it your intention now to cancel ” the trusts, but that question must be viewed in all its context, all of which had reference to the proposed will. Patently she did not intend then and there to revoke the trusts. If she had so intended, the attorney would presumably have instructed her how to do so. Almost a year elapsed between the making of the will and the death of the testatrix. In that intervening period, she made withdrawals from all four accounts. She thus had knowledge of the form of the accounts and opportunity to change them. The only reasonable inference that may be drawn from all of the evidence is that her every declaration related to the content of the will then being prepared for her.
The court holds that all of the declarations of the testatrix are inadmissible to enlarge, modify or add to the provisions of her will, and that none of her declarations is sufficient to effect a disaffirmance or revocation of the Totten Trusts apart from and independently of the terms of the will. The respondent, as beneficiary of the Totten Trusts, is entitled to possession of all of the passbooks, except to the extent that the estate representative is entitled to payment from the trust accounts of sums sufficient to make up any deficit in estate assets in the satisfaction of the decedent’s debts, burial expenses and the reasonable cost of administration of her estate. (Matter of Reich, 146 Misc. 616.)