243 So.2d 239 (1971)
Berry L. LITSEY, As Executor of the Estate of Sidney Bernstein, Deceased, Appellant,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF TAMPA, a Corporation, Tampa Federal Savings & Loan Association, a Corporation, Fidelity Federal Savings & Loan Association of Tampa, a Corporation, and First Federal Savings & Loan Association of Plant City, a Corporation, Rose Seckler, Ellen Seckler, and Marilyn Miller, Formerly Marilyn Seckler, Appellees.
No. 70-24.
District Court of Appeal of Florida, Second District.
January 22, 1971.
*240 Edward I. Cutler and Peter J. Winders of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellant.
L. Robert Frank of Allen, Dell, Frank & Trinkle, Tampa, for appellees Rose Seckler, Ellen Seckler and Marilyn Miller.
Conrad Swanson of Trinkle, Redman, Clawson & Peavyhouse, Brandon, for appellee First Federal Savings & Loan Association of Plant city.
PIERCE, Chief Judge.
On February 7, 1967, Berry L. Litsey, as Executor of the Estate of Sidney Bernstein, deceased, filed suit in the Hillsborough County Circuit Court against the above named Savings and Loan Associations to collect the proceeds of thirteen trust deposit accounts therein which decedent had established in his lifetime. It was alleged that none of the individuals named as beneficiaries had contributed any funds to any of said savings accounts and that none of them had exercised any dominion or control over any of the respective accounts.
Decedent's son, Melvin Bernstein, and the Secklers were named as beneficiaries in twelve of the accounts. The names were misspelled on some of the accounts, but at pretrial conference it was stipulated that no issue would be created by the misspelling of the names of appellees. There was apparently no question as to the identity of the persons mentioned. Account No. X-XXXXX-X in First Federal Savings and Loan Association of Tampa was in decedent's name in trust for "Seckler  Al," the passbook to which was in decedent's name in trust for "Seckler  Ellen."
Rose Seckler, cousin of the decedent, and her daughters, Ellen Seckler and Marilyn Miller, intervened and were made parties defendant. They counterclaimed, asserting they were entitled to the funds in eleven of the accounts. Melvin Bernstein entered an appearance and agreed to be bound by the Court's determination as to the accounts.
Upon opening the accounts the decedent signed a declaration as to each account with First Federal of Tampa, Tampa Federal, and First Federal of Plant City, to the effect that upon the death of the trustee the account and other rights would be paid to said beneficiary. Fidelity Federal *241 had no such written declaration, but for each account was a card containing the following language:
"ITF: (In this space is typed the name of the beneficiary in each account)
Trust Account Account No: (The number of the particular account is shown)
Bernstein Sidney"
Sidney Bernstein executed his will on February 11, 1965, leaving $54,500.00 to his son Melvin; $5,000.00 to his daughter, Evelyn S. Sacks, $10,000.00 each to Rose Seckler, a second cousin, and to Rose's two daughters, Ellen Seckler and Marilyn Miller; and $5,000.00 to each of the three children of his daughter; or a total of $104,500.00. The will contained no other bequests nor did it contain a residuary clause.
On January 28, 1969, the lower Court found that all the bank accounts, with the exception of Account No. X-XXXXX-X in First Federal of Tampa, constituted Totten Trusts, and that plaintiff Executor failed to establish that the decedent did not intend to create tentative trusts or that the decedent ever revoked the tentative trusts. The judgment ordered payment of the funds remaining in the various accounts, together with interest, to the various beneficiaries, with the exception of Account No. X-XXXXX-X, as to which the Court expressly reserved jurisdiction.
On December 9, 1969, after hearing, the Court entered its final judgment as to Account No. X-XXXXX-X, finding that there was insufficient evidence to establish the fact that Ellen Seckler was the beneficiary of the account in question, and ordered the funds paid to Berry L. Litsey as Executor, as an asset of the Estate.
Litsey as Executor appealed from the final judgment of January 28, 1969, and appellee Ellen Seckler cross-assigned error as to Account No. X-XXXXX-X in the judgment of January 28, 1969, and as to the same account in the final judgment of December 9, 1969.
We agree with the trial Court that the bank accounts which are the subject matter of this action constitute Totten Trusts. In the case of Seymour v. Seymour, Fla. 1956, 85 So.2d 726, our Supreme Court specifically adopted the Totten Trust doctrine as laid down in the case of In re: Totten, (1904), 179 N.Y. 112, 71 N.E. 748. See also First National Bank of Tampa v. First Federal Savings & Loan Association, Fla.App. 1967, 196 So.2d 211.
Litsey as Executor contends that the Totten Trust doctrine should be overruled or at least receded from in Florida because it is contrary to the Statute of Wills, the Florida policy against using joint accounts for testamentary purpose, and the policy against illusory and naked trusts. As his authority that any policy permitting the disposition of property through the method of a Totten Trust cannot be a very strong policy, Litsey cites Hanson v. Denckla, Fla. 1956, 100 So.2d 378. In the Hanson case our Supreme Court held that a formal trust was illusory because the settlor divested herself of virtually none of her day-to-day control over the property or the power to dispose of it on her death.
We doubt that Hanson is controlling today. The 1969 Florida Legislature expressed the public policy to be that an otherwise valid inter vivos trust is not to be invalidated merely because the settlor has retained substantial powers over the trust res as well as the trustee, Ch. 69-192, Laws of Florida, 1969, F.S. § 689.075, F.S.A. While not applicable to the present trusts, F.S. § 689.075(2) F.S.A. specifically excludes trust accounts, such as the ones involved here, from having to be in conformity with the formalities for the execution of wills. Thus, the Totten Trust doctrine is a firmly established rule of law in Florida.
Litsey next contends that the trial Court stated the issues as being only of *242 initial intent and revocation and improperly ignored the issue of decedent's disaffirmance of the asserted trusts. Litsey produced two witnesses who testified that decedent told them, in effect, that he was going to open several accounts in Federal Savings and Loan Associations for $10,000.00 each in different names in order to obtain government insurance on the accounts, that the naming of a beneficiary meant nothing, and that a will would be necessary to transfer the funds after the death of a depositor. Litsey contends that these declarations constitute a disaffirmance of the trusts as well as disaffirmance of any intent to give any beneficial interest in the accounts to the named beneficiaries.
The trial Judge made a comprehensive review of all the evidence submitted by Litsey. It is obvious that he considered the evidence of disaffirmance and found that Litsey failed to establish that the decedent ever revoked the tentative trusts.
The trial Court's use of the word "revoke" rather than "disaffirm" is of no moment. Under the Totten Trust doctrine, revocation includes disaffirmance, and revocation may be accomplished by some decisive act or declaration of disaffirmance. In re Koster's Will, 1952, Sur., 119 N.Y.S.2d 2; Walsh v. Emigrant Industrial Sav. Bank, (1919) 106 Misc. 628, 176 N.Y.S. 418, aff. 233 N.Y. 512, 135 N.E. 897; In re: Richardson's Estate, 1929, 134 Misc. 174, 235 N.Y.S. 747; In re Estate of Service, 1965, 49 Misc.2d 399, 267 N.Y.S.2d 782; 38 A.L.R.2d 1259.
Litsey also contends that the inadequacy of decedent's estate to satisfy the specific bequests in his will at the time it was made is an act of disaffirmance. He points out that the testimony of Theodore Chive, C.P.A., shows that had decedent predeceased his wife there would have been only $57,800.00 available before taxes to satisfy the bequests of $104,500.00; and that, upon Mrs. Bernstein predeceasing the decedent and assuming that the trust accounts transferred the funds outside the probate estate, there would, after taxes, be only $85,600.00 available for the $104,500.00 specific bequests.
The trial Judge observed, however, that the evidence also showed that decedent's estate, in addition to the trust accounts, was valued at $110,959.02; that the trust accounts, including those which are not involved in this action, totaled $160,000.00, making the total value of the estate $270,959.02; that decedent's will specifically bequeathed $104,500.00, with no residuary clause; that if the savings accounts went into the estate, there would remain about $210,000.00 for the payment of the bequests after payment of estate taxes and expenses of administration; that if decedent really believed that a will was necessary to transfer ownership of the monies remaining in the various accounts, then the will would have contained bequests totaling at least the sum total on deposit in the accounts; and with assets having a total value in excess of $270,000.00, the decedent only made provision in his will for less than $105,000.00.
In regard to the estate taxes reducing the amounts to be distributed to the specific legatees, the trial Court noted that, according to Mr. Chive's testimony, the beneficiaries of savings accounts would likewise suffer a reduction in the amounts which they would receive because of the imposition of estate taxes (F.S. § 734.041 F.S.A.). There is no evidence that decedent, being a layman, would have known about estate taxes and their effect on the bequests in the will, nor is there any evidence that decedent was aware that after payment of estate taxes the probate estate would not be fully adequate to pay the total amount of the bequests. Also, even though decedent is presumed to have known the law, there is nothing to prevent him from acting contrary to it.
*243 The Executor also contends that the trial Court erroneously concluded that the decedent's misapprehension of the legal effect of the trust accounts had no bearing upon the issue of his intention and disaffirmance. As hereinbefore pointed out, the trial Judge found that plaintiff failed to establish by the greater weight of the evidence that decedent did not intend to create tentative trusts, but he did not base his findings solely on the conclusion that the decedent made a mistake of law. He said: "That giving the most favorable conclusions to the Plaintiff from the evidence, this Court could only say that the decedent may have made a mistake of law as to the effect of the opening of the saving accounts."
It is clear from his thirty page judgment that the trial Judge considered the testimony of the two witnesses and found that there were discrepancies in their testimony; that there is no evidence at all that decedent did not desire the beneficiaries to have what remained in the accounts, or that he desired anyone else to have this money; that the language contained in the declarations decedent signed in connection with the accounts is not so vague or uncertain that the average person should be left in doubt as to its meaning; that there is no evidence or any suggestion or inference to be drawn therefrom that the decedent did not read the declarations, or that the decedent lacked the ability to read or understand such language, or was unfamiliar with these documents. The Court said that decedent apparently was no stranger to business and legal transactions, and there is nothing to indicate that he was excessively naive. Yet, to paraphrase the able trial Judge, "[I]n the face of all these facts the Plaintiff contends that the decedent didn't intend to do what he said in the declarations * * *", a contention to which obviously the Judge did not subscribe.
Appellant argues that the trial Court imposed a higher burden of proof to overcome an express declaration than would be the case where there was no such declaration, despite the fact that this 2nd District Court has held that such signature cards do no more than create "tentative" or presumptive trusts, First National Bank of Tampa v. First Federal Savings & Loan Association, Fla.App. 1967, 196 So.2d 211. This question was not involved in First National Bank of Tampa, supra. The only cases cited involved "a deposit by one person of his own money in his own name as trustee for another, standing alone", and we have found no cases involving Totten Trust accounts where the depositor signed declarations such as those signed by decedent.
While Cohen v. Newton Savings Bank, 1946, 320 Mass. 90, 67 N.E.2d 748, is not controlling, the Court in that case discussed the sort of informal trust where a deposit was made in a bank in the name of the depositor in trust for another without more, in which the law of Massachusetts requires notice to the cestui or to some person in his behalf, and at least implied acceptance by the cestui in order to perfect the creation of the trust. In Cohen the Court made an exception to the rule because the depositor signed a card which stated: "This account I hold in trust, to control and dispose of as I see fit during my lifetime, but on my death to pay to the beneficiary the full amount then standing to the credit of this account." The Court found that the declaration of trust was in writing, was signed by the testator, and its terms were expressly set out and were clear and unambiguous.
In the case sub judice, we think the trial Court's statement was his opinion, going to the weight of the evidence, and that he was correct in weighing the written declarations signed by decedent against the oral declarations allegedly made by decedent to show intent. See In re Krewson's Estate, 1944, 154 Pa.Super. 509, 36 A.2d 250. The burden on one who seeks to prove revocation by oral statements alone is an exceedingly heavy one. 38 A.L.R.2d *244 1243, 1259. In In re: Estate of Service, supra, Surrogate Di Falco discussed Rodgers, supra, Walsh, supra, and Richardson, supra, all of which involved acts of the decedent as well as oral declarations. He noted that the cases where Totten Trusts have been held to be revoked by oral declarations alone appear to be few, citing 38 A.L.R.2d 1259, and Scott on Trusts, 2d ed., § 58.4, p. 492. See also In re: Deneff's Will, 1964, 44 Misc.2d 947, 255 N.Y.S.2d 347, where the Court said that "sustaining petitioner's position here would permit frail oral memory years later to overcome the clear terms of Totten trusts."
Appellant further argues that if the accounts are held to be valid, the bulk of decedent's estate will go to his distant relatives rather than to his children, and that there is a presumption against disinheritance. By his will decedent left $54,500.00 to his son and had several trust accounts with him. The evidence shows that decedent was very fond of the Seckler family, and there was very little evidence as to his relationship with his children. Decedent's will makes specific bequests of $104,500.00, with no residuary clause, and if decedent did not intend the trust accounts to go outside the estate, he made no disposition whatever of more than $105,000.00 after the payment of taxes and expenses of administration. The will makes more sense if read in the light of exclusion of the accounts rather than their inclusion.
Appellee Ellen Seckler's cross-assignment of error has been considered and found to be without merit.
The judgments appealed from are 
Affirmed.
HOBSON and MANN, JJ., concur.