258

## POHLEN et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12167.

Circuit Court of Appeals, Fifth Circuit.

Jan. 23, 1948.

Muckleroy McDonnold, of San Antonio, Tex., for petitioners.

L. W. Post, George A. Stinson, Helen R. Carloss and Louise Foster, Sp. Assts. to the Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Charles Oliphant and Rollin H. Transue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This appeal involves income taxes and penalties for the year 1943. The year 1942 is also involved because of the pay-as-you-go provisions of the Act of 1943, 26 U.S. C.A. Int.Rev.Code, §§ 1621–1627. William F. Pohlen (hereinafter referred to as the taxpayer) and his wife are residents of San Antonio, Texas. They filed joint income-tax returns for 1942, and separate returns for 1943, on which each reported one-half of their community income.

For many years, the taxpayer has been engaged in soliciting funds for various charities. He entered into a contract, dated May 14, 1941, with the Valley Orphanage and Vocational Training School of Harlingen, Texas (later called Santa Rosa Orphanage and Vocational Training School), under which he was to conduct a soliciting campaign on behalf of the Orphanage to raise funds for new buildings and improvements. He was to be paid, out of the funds collected, a salary of $300 per month and two and one-half cents for each letter mailed, plus any additional necessary postage. The rate per letter was later increased to three cents. The Orphanage was to have no liability for these expenses except out of the funds collected. It was understood by the parties, although not provided for in the contract, that the taxpayer was to furnish all of the office equipment, mailing lists, labor, and supplies for the campaign. They operated under this contract until March 31, 1944.

On January 15, 1943, the same parties entered into a new contract, under which

the taxpayer agreed to sell, and the Orphanage agreed to purchase, for a consideration of $12,000 and contingent allowances, the seller's complete mailing lists, office machinery, equipment, office furniture, and good will. Some of the names for the mailing lists were purchased from the taxpayer's brother, J. J. Pohlen, a Catholic priest living in South Dakota, and some from concerns making a business of selling such lists. The current price of lists was from one cent to three cents a name. The taxpayer not only kept card records of the names and addresses of all persons who made a contribution to the campaign prior to the consummation of the sale contract, but also retained these card records after termination of the contract.

The questions presented are (1) whether the Tax Court correctly held that, in computing the gain realized, no deduction for the costs of these mailing lists was authorized; (2) whether the gain must be treated as ordinary income or as a long-term capital gain; (3) whether the taxpayer was entitled to any deduction for depreciation on the mailing lists involved here; and (4) whether he is liable, as the Tax Court held, for the negligence penalty imposed by Section 293(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 293(a).

The taxpayer contended that he was entitled to depreciation on these mailing lists, but failed to produce evidence showing whether the lists of names had a useful life which was ascertainable, or what such period was, and also failed to prove the dates on which these names were acquired. Without such information, no computation can be made even if depreciation be allowable on such lists of names. The taxpayer also contends that he is entitled to deduct the cost of the names from the money received from the contract; but, after the names were transferred under such contract, he still retained all of the names, or most of them. The taxpayer failed to prove when he acquired the names.

■ A deduction for depreciation is expressly limited to the reasonable allowance for exhaustion, wear and tear of property used in business or in the production of income.[1] Thus the statute does not include all property. There are even some kinds of property used in business on which depreciation is not allowable because none is sustained, and other property on which it is not allowable because any exhaustion which may occur is not susceptible of accurate measurement.[2] Accordingly, in order to establish the right to depreciation, it is necessary to show that the property, whether tangible or intangible, will become exhausted within a definite period, which is known as its useful life, and which can be ascertained from specific terms, such as a contract, or can be determined from available facts.

■ The burden of proof in the instant case is not only on the taxpayer to show that the Commissioner's determination was wrong, but also to show the reasonableness of the depreciation claimed. The regulations provide that a taxpayer must furnish the Commissioner full information as to the cost of the property, as to the time of its acquisition, and as to the period of its useful life; and that he must keep records from which such information may be obtained.[3] The Tax Court did not decide whether the list of names here was subject to depreciation; but merely indicated that, if it were, the evidence was insufficient to determine what allowance the taxpayers would be entitled to take. We agree that there was absolutely no evidence before the Tax Court on which to base a finding that any list had a useful life of two or three years or any other period. On the other hand, there was evidence to sustain a finding that these lists were of an indefinite duration.

Furthermore, as Pohlen had been in the business of soliciting funds for charitable purposes for some time, he may have had names before 1941 when he first began working for the Orphanage. He testified that he bought names from his brother and from other concerns, and that in carrying out the contract of January 15, 1943, he of

---

[1] Section 23(a)(1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a)(1).

[2] See 4 Mertens, Law of Federal Income Taxation, pp. 13–15, 77–81, 94–96.

[3] Sections 29.23(1)-5, and 29.23(1)-9, Regulations 111 Appendix, infra.

only turned over in March, 1944, the names he had purchased from his brother, but each and every name that he had purchased in the meantime. Yet, there is nothing at all in the record to show when these names from other concerns were acquired, how many were bought, or what was paid for them. Full information should have been given in regard to these other names, as well as definite facts and dates about the purchasers from his brother. Without this information, no acceptable computation of depreciation or cost could be made.

We think the income realized from the contract was properly taxed in its entirety as ordinary gain, and that the Tax Court correctly held the petitioners were subject to the penalty. The judgment appealed from is affirmed.