Jane G. Thompson CURRY, Appellee,

v.

UNITED STATES of America,
Appellant.

No. 8380.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 12, 1961.

Decided Jan. 3, 1962.

Philip B. Heyman, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz and Lloyd J. Keno, Attys., Dept. of Justice, Washington, D. C., and N. Welch Morrisette, Jr., U. S. Atty., on the brief) for appellant.

David W. Robinson, II, Columbia, S. C. (R. Hoke Robinson and Robinson, McFadden & Moore, Columbia, S. C., on the brief) for appellee.

Before SOPER and BRYAN, Circuit Judges, and CRAVEN, District Judge.

ALBERT V. BRYAN, Circuit Judge.

Jane G. Thompson Curry has successfully sued the United States in the District Court for refund of certain taxes paid by her upon the proportionate part of the accumulated earnings and profits of the Lexington Holding Company distributed to her, as a stockholder, in the liquidation of this South Carolina corporation. The United States appeals.

The marrow of the controversy is the method of treating for tax purposes a corporate asset returned to the stockholders in a liquidation under Internal Revenue Code of 1954, § 333, 26 U.S. C.A. § 333, and consisting of a contract of the South Carolina Electric and Gas Company to

"furnish in perpetuity free of all cost * * * electrical energy of 300 primary HP [per year] at a reasonable secondary voltage from its plant whenever the same is erected on Saluda River at Dreher Shoals, upon the premises hereinafter described * * *."

Power was received by Lexington under this covenant from its acquisition of the contract in 1929 until the liquidation in 1955. Lexington resold the current to customers. The gross receipts during these years amounted to $245,090.95.

Specifically, the issue is whether the initial cost of this contract to Lexington can be set off against Lexington's accumulated earnings and profits in computing the gain recognized, at the time of the liquidation, upon the shares sur-

rendered by the stockholders. The contract cost Lexington $75,000 on March 29, 1929. The liquidation occurred on October 31, 1955, at which time the company had accumulated earnings and profits of $178,159.68. In her return the taxpayer considered this sum as reduced by the contract cost of $75,000, thus leaving a taxable remainder of $103,-159.68. Of this last amount her ratable share was $15,050.97, which she declared as ordinary income.

The Commissioner of Internal Revenue disapproved. He assessed the taxpayer on the basis of a participation in the full $178,159.68 without reduction for the contract. An increase of her taxable portion of the earnings and profits by $10,828.88 resulted, creating a tax deficiency of $4108.90 with interest. She paid it. The District Court agreed with the taxpayer's contention, and by the judgment now under review it ordered the payment refunded.

This we think error.

■ Concededly, the requirements of Section 333 were meticulously met and all the stockholders joined in a complete cancellation of Lexington's entire outstanding stock. Under this section gain on each share owned by a noncorporate stockholder is recognized to the following extent and no further:

(a) As dividends, each share's ratable portion of the earnings and profits of the corporation accumulated after February 28, 1913; and

(b) As short-or long-term gain, so much of the remainder of the gain of the corporation that is not "in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after December 31, 1953, exceeds his ratable share of such earnings and profits."

There is no provision for the recognition of gain except to the extent of accumulated earnings and profits and the excess, if any, of money, stock and securities. The foremost purpose of the Congress in enacting Section 333 was to permit postponement of the recognition of unrealized appreciation in other corporate assets until such gain was actually realized by the stockholder on a subsequent sale or other disposition of the asset. Senate Report on the Internal Revenue Code of 1954, S. Rep. No. 1622, 83rd Cong., 2d Sess., p. 256; 3 U.S. C. Cong. & Adm. News (1954) 4621, 4893. Therefore, as the taxpayer concedes, the contract in this case would not be considered for tax purposes at the time of liquidation, unless, as the taxpayer contends, it is considered in the ascertainment of the accumulated earnings and profits.

Spelled out, the contention of the taxpayer is this: earnings and profits are not determined until the capital invested to produce them has been recouped; here, that investment was the cost to Lexington of the contract; this cost basis could have been recovered by Lexington by writing it off before receipts from the contract were declared as income; and although Lexington did not so retake the cost, the earnings and profits remained at all times subject to such reduction to reflect the return of capital. Hence, she asserts, upon the liquidation the stockholders are entitled to regard the earnings and profits, for tax purposes, as a source of recoupment. The District Court was so persuaded. But this position cannot prevail, we think, because the contractual covenant in suit has never been a depreciable or amortizable item. As far as it is reasonably foreseeable, the useful life of the contract is unbounded. The experience of Lexington discloses no default in the keeping of the covenant by South Carolina Electric and Gas Company and no diminution in the natural resources from which the power developed.

Taxpayer's position is not aided by her reference to the statement in Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185, 38 S.Ct. 467, 469, 62 L.Ed. 1054 (1918), also quoted in Burnet v. Logan, infra, reading as follows:

"In order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration."

This does not mean, however, that every investment is recoverable through depreciation or amortization allowance charged upon earnings, whether periodical or at once. Some capital assets are recapturable only upon the disposition of them. The nature of the item, of course, dictates the method of the recaption. Here the taxpayer has not shown that the covenant was of a depreciable or amortizable character. That was her burden, both initially before the Commissioner and later in court to overcome his contrary determination. Pohlen v. Commissioner, 165 F.2d 258 (5 Cir.1948).

In her effort to establish an inherent uncertainty in the duration as well as a potential decline in value of the asset, the taxpayer adverts to various portentous contingencies. She mentions the possibility of its termination by the covenantor, the difficulties of resale of the power because of the limited quantity offerable, the hazard of strikes and floods, and other threats to the performance of the obligation. But these are only speculations. They do not even indicate a ground for allocating an acceptable life expectancy to the contract. Without it no scale is afforded for the write-off of the contract.

In Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), both the trial court and the taxpayer find conclusive assurance for the taxpayer's contention. There the taxpayer in 1916 was a stockholder in a corporation holding a substantial stock interest in an operating company which had a lease upon an iron mine with the right to extract the ore for 97 years commencing in 1895. On the sale of this stock she took, in addition to a cash sum, an agreement of the purchaser to pay her annually a stipulated amount for each ton of ore received by the purchaser as its apportionment of the product of the mine. Until her annual receipts under the agreement, together with the cash, aggregated the cost basis of her stock, said the Court, the receipts were not taxable as income.

The Burnet decision is immediately distinguishable here upon the difference in the characteristics of the two assets. There the asset had a definite span—76 years remaining of the original lease term. Therefore, even apart from the mine's expendability, the agreement was but a diminishing asset. By its own terms its value decreased every year. In this regard it was, as the Court noted, analogous to an annuity contract. At the end of the term nothing of the agreement was left to the holder.

On the other hand, the contract before us has no fixed terminal date. It is not, so far as is predictable, a vanishing asset. At least theoretically, its principal is not consumed by use or by time. At the end of any given period, presumably, it will still be intact, a valid, subsisting and perpetual covenant for the supply of electric power.

The evanescence of the one and the permanency of the other asset is manifested, too, by their very structures and operation. Taxpayer in Burnet v. Logan was possessed of an unconditional right under the agreement to receive income for a prescribed period. Our taxpayer has an unconditional right by her contract to receive and devote property indefinitely to the creation of income. To illustrate the contrast, our taxpayer is in the position of an owner of land; in Burnet the taxpayer was the holder of a bare right to receive rent for a fixed term. For these factual differences in the contracts, the holding in that case is not precedent here.

Our conclusions find generous support in Nachman v. Commissioner, 191 F.2d 934, 936 (5 Cir. 1951), involving a liquor license—one of a limited number in a municipality—enhanced in value by an

almost limitless right of renewal and transferability. Classified as a capital asset, its cost above the official fee was held not dissoluble in earnings. Indeed, Commissioner v. Carter, 170 F.2d 911, 913 (2 Cir. 1948), cited by the taxpayer here, also acknowledges the principles we invoke. The other decisions she presents us are not to the contrary.

The judgment of the District Court must be set aside and the action dismissed.

Reversed and dismissed.