CURTIS R. WILHELM and ESTELLE WILHELM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
WILHELM v. COMMISSIONER
Docket No. 6850-76.
United States Tax Court
T.C. Memo 1978-443; 1978 Tax Ct. Memo LEXIS 74; 37 T.C.M. (CCH) 1847-2; November 6, 1978, Filed Curtis R. Wilhelm, pro se. Michael A. Mayhall, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $1,658.30 in petitioners' Federal income tax for the taxable year 1973, and an addition to tax under section 6653(a)[1] in the amount of $82.92. *76 The issues for our decision are: (1) Whether petitioners are entitled to a theft loss deduction in the amount of $13,500 regarding funds in bank accounts formerly owned by George J. Wilhelm, deceased; (2) Whether petitioners are entitled to a deduction in the amount of $4,550 for Federal estate taxes paid by the estate of George J. Wilhelm for the Federal estate tax liability of such estate; (3) Whether petitioners are entitled to a casualty loss in the amount of $110 due to the damage to their flowers; (4) Whether petitioners are entitled to a business expense deduction in excess of $1,600 as determined by respondent; and, (5) Whether any part of the underpayment of petitioners' income tax for the taxable year 1973 was due to negligence or intentional disregard of rules and regulations set forth in section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits thereto are incorporated by this reference. Mr. Curtis R. Wilhelm and his wife Estelle Wilhelm resided at Gillette, New Jersey at the time they filed their petition in the instant case. They timely filed their joint Federal income tax return for the *77 taxable year 1973 with the Internal Revenue Service Center, Newark, New Jersey. Mrs. Wilhelm is a party to this case only because of her filing a joint return with her husband, Curtis R. Wilhelm, who herein will be referred to as petitioner. Petitioner's father, Mr. George J. Wilhelm (decedent), died testate on August 14, 1972. Prior to his death decedent established two savings accounts by depositing $6,000 at Bowery Savings Bank, New York and $7,500 at Dime Savings Bank, New York. Both accounts were entitled "George J. Wilhelm In Trust For Silva Wilhelm." Mrs. Silva Wilhelm was married to Gilbert E. Wilhelm, a son of decedent who died prior to decedent's death. From the inception of these two accounts to the date of decedent's death the principal remained intact and while the decedent retained possession of the "bank account books" during all relevant times he did not revoke the accounts or change the beneficiary. Silva Wilhelm remained the beneficiary. The decedent died leaving a will which in pertinent part provided: THIRD: I give, devise, bequeath and appoint all the rest, residue and remainder of my property, real or personal, of whatsoever kind and description and *78 wheresoever situate of which I may die seized or possessed or to which I may be in any way entitled at the time of my death or over which I may then have any power of disposition or appointment (all of which property is hereinafter designated as "my residuary estate"), as follows: A. One-half (1/2) to my son, CURTIS R. WILHELM, now residing at 80 Western Boulevard, Gilette [sic], New Jersey, if he shall survive me; if he shall predecease me, then to his wife, ESTELLE WILHELM. B. The other one-half (1/2) to my Trustee, hereinafter named, IN TRUST NEVERTHELESS, to invest and reinvest and to pay and apply the net income for the support and maintenance of my son, GILBERT E. WILHELM, now residing at 1111 Butternut Street, Syracuse, New York, with full power in my said Trustee to make payments from principal to my said son at such times and in such amounts as my said Trustee in his uncontrolled discretion may deem necessary for the proper support and maintenance of my said son. Upon his death the Trust shall terminate and I give, devise, bequeath and appoint the principal and any accrued income to my said son, CURTIS R. WILHELM, or if he shall predecease me, to his wife, ESTELLE *79 WILHELM. * * *
FIFTH: I direct that any estate, inheritance, legacy, succession or similar duty or tax which shall become payable under any present or future law in respect to any property or any interest passing under this my Last Will and Testament, or otherwise, shall be paid out of the principal of my residuary estate. On March 21, 1973 petitioner, in his capacity as executor, filed an estate tax return on behalf of decedent's estate. The gross estate included the two savings accounts of which Silva Wilhelm was beneficiary ($13,500) and the estate of George J. Wilhelm paid estate tax in the amount of $13,445.76. The proceeds used to satisfy the estate tax liability came from decedent's residuary estate which did not include the two accounts payable to Silva Wilhelm, as provided in decedent's will.Following decedent's death petitioner, as executor, came into possession of the bank account books relating to the accounts for the benefit of Silva Wilhelm. During 1973 petitioner started a new business as a credit consultant and utilized a portion of his residence as an office in which he conducted business. He purchased office equipment and supplies that he used in the *80 consulting business. On June 4, 1973 Mr. and Mrs. Millard Smith agreed to allow petitioner to act as their attorney in fact for the purpose of terminating Mr. Smith's business activities in New Jersey. At that time Mr. Smith and his wife resided in Florida. In his capacity of attorney in fact, petitioner notified an attorney for the purpose of representing Mr. Smith with respect to the settlement of his business and personal matters still pending in New Jersey. Petitioner kept Mr. Smith informed of the developments concerning the settlement of his financial affairs by mail and telephone. Because petitioner suspected that someone was monitoring his residence telephone, he called Mr. Smith from public telephone booths and paid for the calls with cash. Petitioner kept no record of these calls with respect to the actual cost of each call. He estimated the amount spent on the telephone calls to be approximately $190 during 1973. Petitioner's representation of Mr. Smith lasted approximately 53 working days and during this time he incurred expenses for meals, office supplies, postage stamps, and parking fees. Petitioner estimated that each parking fee was approximately $1.50. In *81 addition, petitioner corresponded with Mr. Smith by mail with respect to billing and progress reports. For the taxable year 1973 petitioner and his wife owned two automobiles which petitioner used for both business purposes and personal activities. Petitioner and his wife traveled to Huntington, New York to prepare decedent's personal residence for sale. Petitioner estimated the expenses relating to these trips was approximately $25 per day. In his capacity as executor petitioner traveled to New York for the purpose of consulting with attorneys who represented decedent's estate with respect to probate matters. He purchased toll tickets which he used to pay for toll fees while traveling to New York. The toll tickets came in a booklet which cost $9.60 each. He purchased four booklets during 1973. Petitioner investigated the possibility of relocating his business in another part of the country. He considered both Florida and California to be profitable areas for the development of his consulting business. To this end petitioner and his wife made trips in their automobile to both states for the purpose of determining the cost of purchasing and establishing a residence. During *82 the trip to Florida petitioner and his wife spent 10 days and petitioner calculated their expenses for meals in the amount of $25 per day. During their trip to California petitioner and his wife traveled for 21 days in their automobile and petitioner calculated their expenses for meals in the amount of $25 per day. For the taxable year 1973 petitioner estimated that he traveled 14,000 miles with respect to his activities as a consultant and executor. Petitioner determined the number of miles traveled during 1973 by taking the difference between the beginning and ending reading on the speedometer of their two automobiles and applying an expense in the amount of $.15 per mile. He depreciated the office equipment by taking one-fifth of its cost. Petitioner paid utility bills during 1973 in the amount of $183.47. These bills related to petitioner's personal residence. In addition, petitioner paid $12 for the repair of the water heater used in his personal residence. Petitioner and his wife lived in New Jersey during the taxable year in issue. Their residence was landscaped with trees, bushes, and flowers (tulips). Due to the cold weather and ice which occurred during the *83 winter of 1973 petitioners' flowers were damaged. In addition, wild deer further damaged petitioners' flowers during the spring of the same year. On their joint Federal income tax return for the taxable year 1973 petitioner and his wife claimed the following deductions: Item
Amount
Theft loss
$ 13,500
Estate tax
4,550
Business Expenses [2] *84 4,705
Casualty loss
(flower damage)
110
Total
$ 22,865
Petitioner contends that while the trust established with the Bowery Savings Bank involved no fraud, he has a claim against Silva Wilhelm to the extent of the deposits in this account. Petitioner argues that the decedent during his life paid Silva Wilhelm sums of money which were approximately equal to the deposits contained in the Bowery Savings Bank account. Therefore, petitioner takes the position that he is entitled to the Bowery deposits based on some sort of claim of right against Silva Wilhelm. While petitioner's position and argument is somewhat unclear, we fail to see what relevance his position is with respect to the question of whether petitioner is entitled to a theft loss deduction. For these reasons we hold that petitioner has failed to prove that he incurred a loss due to theft under section 165(c)(3), and we therefore sustain respondent on this issue. The second issue for our *85 decision is whether petitioner is entitled to a deduction in the amount of $4,550 which represents a portion of the Federal estate tax paid by the estate of George J. Wilhelm in satisfaction of its estate tax liability. Petitioner's father, George J. Wilhelm, died during 1972. In his will he directed that any estate tax owing be paid out of his residuary estate. Following his death, decedent's estate paid the Federal estat teax as provided in his will. The estate tax was calculated based on the value of his gross estate which also included the two Totten trusts, as discussed in the first issue. Petitioner takes the position that he is entitled to either a business expense deduction or a bad debt deduction in the amount of $4,550 because this amount represents a portion of the estate tax paid by decedent's estate which is allocable to the Totten trusts which were included in decedent's gross estate. Petitioner argues that Silva Wilhelm is a beneficiary of the estate and therefore should contribute her allocable share of estate tax. Respondent contends that petitioner is not entitled to a deduction for estate tax allocable to the Totten trusts because the estate of decedent, and *86 not petitioner, paid the estate tax and section 275(a)(3) specifically prohibits a deduction for estate taxes. Respondent argues that even if petitioner had paid the estate tax he is not entitled to a business expense deduction. We agree. In L.B. Foster Co. v. United States,248 F.2d 389 (3d Cir. 1957), the Court held that a corporation was not entitled to deduct an amount it paid in satisfaction of a decedent shareholder's estate tax liability. The decedent shareholder in that case owned an insurance policy on his life with the corporation as beneficiary. While the proceeds were payable to the corporation they were included in decedent's gross estate for estate tax purposes. The corporation paid the estate tax which was allocable to the proceeds of the insurance policy and claimed a deduction in that amount as a business expense. The Court relying on the predecessor of section 275, section 23(c)(1)(D), of the Internal Revenue Code of 1939, held that a taxpayer cannot accomplish by indirection that which is directly prohibited from doing by legislation provisions, i.e., the prohibition of a deduction for estate taxes. Respondent further argues that petitioner *87 is not entitled to a bad debt deduction for the reason that Silva Wilhelm was under no obligation to contribute to the payment of estate tax for decedent's estate. Respondent therefore takes the position that no debtor-creditor relationship existed between petitioner and Silva Wilhelm relying upon section 1.166-1(c), Income Tax Regs.
As we have already found, decedent's will specificially provided that any estate tax owing was to be paid out of his residuary estate. In our consideration of the first issue we held that upon decedent's death the deposits in the Totten trusts passed to Silva Wilhelm by operation of law and were not part of decedent's residuary estate. In Re Schmith's Estate,supra.Accordingly, we sustain respondent with respect to this issue. The third issue for our decision is whether petitioner is entitled to deduct $110 as a casualty loss due to damage of petitioner's flowers. During 1973 petitioner and his wife resided in New Jersey. They landscaped their residence with trees, bushes, and flowers. On their joint Federal income tax return for the taxable year in issue petitioner deducted $110 as a casualty loss arising from *88 damage to his flowers which was caused by ice during the winter and deer during the spring of 1973. Section 165(a) allows an individual a deduction for losses suffered due to damage or destruction of property not connected with a trade or business caused by fire, storm, or other casualty to the extent that the loss from each casualty exceeds $100. Section 165(c)(3). The amount of the loss which is deductible is the difference between the fair market value of the property immediately before the casualty and its fair market value immediately after the casualty. Millsap v. Commissioner,46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. The improvements to real property, not used in a trade or business, such as trees and shrubbery are considered an integral part of the property. Sec. 1.165-7(b)(2), Income Tax Regs. Therefore applying the test set forth in Millsap and the regulations, petitioner must prove the difference between the fair market value of his residence *89 before the damage to his flowers and the fair market value of his residence immediately after the casualty. Petitioner has failed to produce any evidence with respect to fair market value of his residence before and after the casualties he claims occurred during 1973. We therefore hold in favor of respondent. The fourth issue for our decision is whether petitioner is entitled to business expense deduction in excess of $1,600 as determined by respondent. On their joint return petitioner and his wife claimed $4,705 as a business expense deduction for the year 1973. The claimed deduction consisted of the following items and amounts: ITEM
AMOUNT CLAIMED
Depreciation $ 333
Water Heater Repair
12
Salaries and Wages
1
Office Supplies
165
Automobile Expense
2,145
Tolls and Parking
132
Telephone
199
Home Office
243
Executor & Consultant
1,475
Expenses
Total
$ 4,705 Respondent determined that petitioner was entitled to a business expense deduction in the amount of $1,600, disallowing the balance ($3,105) for the reason that petitioner failed to substantiate the claimed expenses and that the expenses petitioner incurred in his capacity as executor *90 of his father's estate were not deductible. The determination made by respondent is as follows: ITEM
AMOUNT CLAIMED
ALLOWED
DISALLOWED
Depreciation $ 333
$ 0 $ 333
Water Heater Repair
12
0
12
Salaries and Wages
1
0
1
Office Supplies
165
100
65
Automobile Expense
2,145
1,200
945
Tolls and Parking
132
0
132
Telephone
199
100
99
Home Office
243
0
243
Executor and Consultant
1,475
200
1,275
Expenses
Totals
$ 4,705
$ 1,600
$ 3,105
Petitioner has the burden of proof and must substantiate the expenses claimed pursuant to his trade or business. Rugel v. Commissioner,127 F.2d 393, 395 (8th Cir. 1942). During 1973 petitioner embarked on a new business venture as a credit consultant. He purchased office equipment and supplies and conducted his business from his residence in New Jersey.As a credit consultant he represented a client who had experienced financial difficulties in the New Jersey area. Petitioner, in his capacity as consultant, contacted an attorney who agreed to represent the interests of petitioner's client with respect to his financial problems. Petitioner corresponded with his client, *91 who lived in Florida, by telephone and mail. He used public telephone booths to call his client and paid cash for the calls. In addition petitioner utilized his two automobiles when traveling to meet his client's attorney. Petitioner considered Florida and California to be potentially good areas of the country for the development of his consulting business. Consequently, he and his wife traveled to both states by automobile to investigate the cost of acquiring a residence; they spent 10 days in Florida and 21 days in California. Following the death of petitioner's father, petitioner and his wife traveled by automobile to his father's residence located at Huntington, New York. They made these trips for the purpose of preparing the residence for sale. In addition, petitioner, in his capacity as executor, traveled to New York for the purpose of conferring with attorneys who were responsible for probate of decedent's estate. Respondent contends that petitioner is not entitled to a business expense deduction in excess of $1,600 allowed by respondent for the reason that petitioner has failed in his burden of proof. We agree with respondent. Petitioner presented no evidence *92 with respect to the amount claimed for depreciation. The record is bare as to any method of depreciation utilized by petitioner. Petitioner testified that he calculated an amount for depreciation by taking 20 percent of the cost of various items of equipment he purchased during 1973. This, absent any other evidence, is insufficient.Petitioner's proof must adequately show the cost or other basis of the property, its useful life, its salvage value, the extent to which it was previously depreciated, and the method and computation of the depreciation. Campbell v. Commissioner, 504 F.2d 1158 (6th Cir. 1974); Pohlen v. Commissioner, 165 F.2d 258 (5th Cir. 1948); Lightsey v. Commissioner, 63 F.2d 254 (4th Cir. 1933); [4] (A)-7 (A)-7 (A)-7 (A)-7 Sec. 1.167 (a)-7, Income Tax Regs. The expense claimed in the amount of $12 for the repair of petitioner's water heater is clearly a personal expense absent evidence showing that it related to his trade or business. There is nothing in the record to so indicate. Sec. 262, I.R.C. Petitioner claimed a deduction for office supplies in the amount of $165. In *93 an attempt to substantiate petitioner produced various letters and documents he prepared as a consultant. Considering this evidence in a manner most favorable to petitioner we hold that petitioner has failed to prove that he is entitled to more than allowed by respondent, i.e., $100. With regard to petitioner's claimed automobile expense, petitioner testified that he calculated the number of miles traveled in connection with his business by determining the beginning mileage on his automobiles and mileage readings at the end of the year. From this figure he made an estimate of the number of miles he traveled for purposes of business. Such proof is totally inadequate to overcome respondent's determination with respect to this item. Petitioner testified that during 1973 he purchased four toll booklets for $9.60 each; however, there is nothing in the record to demonstrate if any or all of these toll tickets were used pursuant to his trade or business. Likewise the parking lot receipts which petitioner presented in an effort to substantiate that expense did not reflect any date or amount spent for parking. We find this evidence to be unreliable. Petitioner presented a record of telephone *94 calls he made during 1973 in an attempt to substantiate his claimed telephone expenses. This record reflected neither the cost of each phone call nor the person who actually paid for the call. The amount claimed by petitioner ( $199) is based on petitioner's estimate which considering respondent's allowance ( $100), we find inadequate and unreliable. Therefore, based on the entire record before us we hold that petitioner has failed to prove that he is entitled to a business expense deduction in excess of the amount allowed by respondent ($1,600). The final issue for our decision is whether any part of the underpayment of petitioners' income tax for the taxable year in issue was due to negligence or intentional disregard of rules and regulations under section 6653(a). Petitioner has the burden of proof. Estate of Mason v. Commissioner, 64 T.C. 651 (1975). In order for petitioners to carry their burden they must present competent evidence which proves that they were not negligent or did not *95 intentionally disregard the regulations. Smith v. Commissioner, 66 T.C. 622 (1976). The evidence presented by petitioner with respect to his business expenses is vague, in some instances unintelligible, and devoid of sufficient detail for purposes of substantiation, as demonstrated by our discussion of the fourth issue above. For these reasons we find that petitioner was negligent and accordingly sustain respondent's determination of an addition to petitioners' income tax for the taxable year 1973. Decision will be entered for the respondent . Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. The component parts of the business expense deductions as claimed by petitioner are as follows: Item
Amount
Automobile expense
$ ,145 (14,300 miles at
$ 15 per mile)
Executor and consultant
expenses 1,475
Depreciation 333
Home office expense 243
Telephone 199
Office supplies and
postage stamps 165
Toll fees and parking 132
Repairs 12
Salaries and wages 1
Total
$ 4,705
The Commissioner in his statutory notice of deficiency determined that: (1) the theft loss in the amount of $13,500 was not allowable because petitioner did not establish that the alleged loss came under the provisions of section 165(c)(3); (2) the casualty loss was not allowable because petitioner did not establish that a loss was incurred or if incurred petitioner did not establish the amount of the loss and its deductibility; (3) petitioner did not establish that the estate tax paid by the estate of George J. Wilhelm is deductible under section 164; and (4) the business expenses claimed by petitioner were allowable in the amount of $1,600 as follows: Claimed on Item
Return
Allowed
Disallowed
Depreciation $ 333 $ 0 $ 333
Repairs
12
0
12
Salaries and wages
1
0
1
Office Supplies
165
100
65
Automobile
2,145
1,200
945
Tolls and parking
132
0
132
Telephone
199
100
99
House expense-Huntington,
243
0
243
New York
Expenses-executor and
1,475
200
1,275
consultant-miscellaneous
(flower damage)
Totals
$ 4,705
$ 1,600
$ 3,105
Finally, the Commissioner determined that the underpayment of tax for the taxable year 1973 was due to negligence or intentional disregard of rules and regulations as provided in section 6653(a). Consequently, the Commissioner asserted a five percent addition to tax in the amount of $82.92. OPINION Petitioner has the burden of proof and in order to prevail must establish by a preponderance of the evidence that respondent's determination contained in the statutory notice of deficiency is erroneous. Welch v. Helvering,290 U.S. 111 (1933). Initially petitioner argues on brief that the record in the instant case presents no genuine issue of fact and therefore petitioner takes the position that he is entitled to prevail as a matter of law. On January 23, 1978 this Court considered petitioner's motion for summary judgment which set forth the same arguments that are contained in his brief. We denied petitioner's motion on January 23, 1978 and we again deny his plea for summary judgment for reasons which will be set forth below in more detail. Petitioner also argues that he is entitled to attorney's fees in the amount of $12,000 and damages for mental anguish in the amount of $16,000. On January 23, 1978 this Court by order denied petitioner's request for attorney's fees and we continue to so hold. This Court is without authority to make an allowance of attorney's fees and damages for mental anguish. Key Buick Co. v. Commissioner,68 T.C. 178 (1977); Tufts v. Commissioner, 70 T.C.     (Aug. 23, 1978); section 7442, I.R.C. 1954. The first issue for our decision is whether petitioner is entitled to a theft loss in the amount of $13,500. George J. Wilhelm, petitioner's father, died testate during 1972. Under his will petitioner received decedent's entire residuary estate. In addition, decedent, prior to his death, established two savings accounts, each of which was entitled "George J. Wilhelm, In Trust For Silva Wilhelm," by depositing $7,500 with the Dime Savings Bank of New York and $6,000 with the Bowery Savings Bank, New York.Silva Wilhelm remained the beneficiary of the savings accounts from the date of their establishment to the date of decedent's death. Petitioner takes the position that the Dime account was fraudulently established and that the Bowery account had a claim against it by either the decedent's estate or petitioner. Petitioner therefore argues that the funds from these accounts are part of the residuary estate and therefore belong to petitioner by virtue of the provisions of his father's will. The savings accounts established by decedent which he held in trust for Silva Wilhelm must be characterized as what are commonly known as Totten trusts. In Re Totten,179 N.Y. 112 (1904). Totten trusts have been given special protection by New York courts, as a sort of "poor man's will." A provision in a mortgage or other contract that any amount unpaid at death shall pass to a specified beneficiary is invoked as a testamentary disposition. In Re Deneff's Will,255 N.Y.S. 2d 347, 349 (1964). However, the Court of Appeals held in Totten at 126 that any balance in a savings account would pass to the trust beneficiary if the depositor predeceased without revocation, or some other decisive act or declaration of disaffirmance. In the case of In Re Koster's Will,119 N.Y.S. 2d 2, 4-5 (1952), the court set forth four methods by which the depositor could revoke a Totten trust: (1) by changing the beneficiary; (2) by the terms of his will; (3) by an unequivocal act or declaration; or (4) by inadequacy of estate assets to satisfy the testamentary gifts, funeral and administrative expenses, taxes and other charges. In Deneff the decedent orally revoked the bank books in trust for two of his brothers and expressed a desire that the funds in trust be distributed to all of his brothers in equal shares. The decedent died testate and his will provided that after payment of funeral and administration expenses the residuary estate vested in his brothers in equal shares per capita. Due to his failure to revoke the Totten trusts by any of the four methods set forth in Koster's Will, the Court held that the decedent did not revoke the trusts and therefore the trust beneficiaries were entitled to the deposits to the exclusion of the remaining brothers. In the instant case the decedent's will provided: * * * all the rest, residue and remainder of my property, real or personal, of whatsoever kind and description and wheresoever situate of which I may die seized or possessed or to which I may be in any way entitled at the time of my death or over which I may then have any power of disposition or appointment (all of which property is hereinafter designated as "my residuary estate"), * * * The trusts established for the benefit of Silva Wilhelm remained intact from their inception to the date of decedent's death and Mrs. Wilhelm remained the beneficiary at all times. There is nothing in the record which would indicate that the decedent revoked the trusts by any of the methods set forth in Koster's Will. Accordingly the deposits in the Totten trusts in the amount of $13,500 passed to Silva Wilhelm by operation of law and were not part of decedent's residuary estate. In Re Schmith's Estate,268 N.Y.S. 2d 286 (1966), affd. 280 N.Y.S. 2d 365 (1967). The deposits in the two Totten trusts would be included in decedent's residuary estate if petitioner proves that the establishment of the trusts was based on fraud or undue influence. In Re Schmith's Estate at 288. In this regard petitioner has failed. With respect to the trust created at the Dime Savings Bank petitioner testified that the lawyers representing the decedent fraudulently persuaded the decedent to establish this account. Petitioner's testimony consisted of conclusions relating to the question of fraud and was uncorroborated. None of the lawyers to whom petitioner refers testified nor did Silva Wilhelm or any representative of the Dime Savings Bank. It is well settled that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable. Interstate Circuit v. United States,306 U.S. 208 (1939); Wichita Terminal Elevator v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Moreover, even if petitioner established that the account with the Dime bank was fraudulently created, which he has not, he must additionally prove that there is no reasonable chance of recovery of the stolen item, i.e., the deposits of the account. As respondent correctly argues, a deduction under section 165(c)(3) is not allowable until it can be determined that no recovery is reasonably certain. Section 1.165-1(d)(3), Income Tax Regs.; see United States v. Rexach,482 F.2d 10 (1st Cir. 1973). In the instant case petitioner has retained the bank account book relating to the deposit with the Dime bank. The funds in this account have remained intact from the original deposit to the present time. Petitioner testified that he has instituted no action against Silva Wilhelm for the recovery of the Dime deposits. In addition, petitioner attempted to introduce various documents consisting of correspondence between himself and a number of attorneys, as well as representatives of respondent, relating to the probate and estate tax liability of decedent's estate.This Court reserved ruling on the admissibility of these documents based upon respondent's position that the documents were hearsay, irrelevant, and immaterial. After a thorough examination of these documents which consist of exhibits numbered 5 through 129, 133 through 142, 148 and 149, we sustain respondent's objections. Presumably respondent has abandoned his objection to the admissibility of exhibits numbered 48 and 122 (evidence of the two Totten trust accounts) for the reason that these two exhibits form the basis for his requested findings of fact. Accordingly, we admit these exhibits.
[3]↩
4. Each one of these cases affirming a Memorandum Opinion of of this Court.↩