James E. COX and Christine D. Cox, Appellants,

v.

UNITED STATES of America, Appellee.

No. 74–1227.

United States Court of Appeals, Ninth Circuit.

June 15, 1976.

---

Robert E. Zang (argued), of Zang, Fried-man & Damir, San Francisco, Cal., for appellants.

George G. Wolf (argued), Tax Div., Dept. of Justice, Washington, D. C., for appellee.

## OPINION

Before CHOY and GOODWIN, Circuit Judges, and REAL,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

Taxpayers appeal the summary judgment which denied a tax refund. We vacate and remand.

Taxpayers claimed a casualty-loss deduction of approximately $150,000 for tax year 1967. The Commissioner disallowed the deduction. Taxpayers paid the disputed tax, and filed this action for a refund. The Commissioner moved for summary judgment. The district court held for the Commissioner and denied the deduction. See *Cox v. United States,* 371 F.Supp. 1257 (N.D.Cal.1973).

Most of the facts were stipulated. In 1965, taxpayers purchased for $150,000 a cotenancy in unimproved real property located in Livermore, California. They and their cotenants planned to hold the land for eventual residential development. Shortly after the purchase, oil was discovered. After a well was brought into production, the market value of the land increased to approximately $750,000. But, after a month, a sudden and unforeseen intrusion of salt water into the oil-bearing formation destroyed the well. The fair market value of the land dropped approximately $350,000, to approximately $400,000.

From the stipulated facts and the record, it appears that taxpayers' adjusted basis in the property was $150,000 and their portion (as cotenants) of the diminution in the fair market value of the property was approximately $200,000.[1]

Section 165, Internal Revenue Code of 1954, 26 U.S.C. § 165, allows individuals a deduction only if the loss involves business or investment property or if the loss of nonbusiness property is occasioned by a "casualty". 26 U.S.C. § 165(c).[2] The taxpayers treated the loss as a casualty loss.

Taxpayers claim the casualty-loss deduction as measured by Treas.Reg. § 1.165–7(b)(1)(i); according to that regulation, the amount of the deduction shall be the diminution of the fair market value of the property proximately caused by the casualty or the adjusted basis of the property, whichever is lesser.[3] Since the taxpayers' adjusted basis ($150,000) was less than the diminution in the fair market value of the property ($200,000), they claimed a casualty-loss deduction of $150,000.[4]

■ In granting the government's motion for summary judgment, the district court relied on its perception of the legislative intent behind the casualty-loss deduc-

---

\* The Honorable Manuel Real, United States District Judge for the Central District of California, sitting by designation.

1. In view of its claim in this court, the stipulated facts do not make clear whether the government concedes an adjusted basis of $150,000 unconditionally or presses an allocation of adjusted basis theory in which the surface rights are valued at $150,000 and the oil rights would be valued at zero.

2. Int.Rev.Code of 1954, § 165(c):
    "In the case of an individual, the deduction under subsection (a) shall be limited to—
    (1) losses incurred in a trade or business;
    (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and
    (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * "

3. Treas.Reg. § 1.165–7(b)(1):

"In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either—
    (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or
    (ii) The amount of the adjusted basis prescribed in § 1.1011–1 for determining the loss from the sale or other disposition of the property involved.
    * * * ."

4. The first $100 of a casualty loss are not deductible. Int.Rev.Code of 1954 § 165(c)(3). The Coxes actually claimed a $149,900 deduction, but the following discussion will use the rounded figure.

tion. Some catastrophes, the court said, might so impair a taxpayer's financial position that he could not pay income taxes. Because the loss involved in this case did not affect taxpayers' cash flow, did not require expenditures for repairs,[5] and did not compromise the taxpayers' originally intended use of the property,[6] the court held that the loss was not the type of casualty loss for which Congress had provided a deduction.

The financial plight of the individual who has suffered a casualty loss was, no doubt, one of the motivations for designing the casualty-loss deduction; and the diminished taxpaying capacity of such a person certainly justifies the deduction.[7] But the statute, the regulations, and the case law do not predicate the deductibility of a casualty loss on the individual's taxpaying capacity or on the out-of-pocket nature of the loss.[8] Furthermore, there is no requirement that the damage to property be repaired or repairable, nor any required demonstration of a reduced capacity to pay one's taxes.

The district court also indicated that the loss was not deductible because it represented only a decrease in "unrealized appreciation". Neither the statute nor the regulations differentiate between casualty losses to property which has appreciated and casualty losses to property which has not.[9] One of the examples cited in the regulations shows that casualty-caused damage to a piece of property whose fair market value is greater than its adjusted basis can lead to a deduction, even though part of the loss represents "unrealized appreciation". Treas.Reg. § 1.165–7(c)(3) (ornamental shrubs). See also I.R.S.Pub. No. 155 (Rev. 2–59), reprinted in 2 CHH 1976 Stand.Fed. Tax Rep. ¶ 1566.009 at 20,175. That the loss was one of unrealized appreciation simply does not enter into the analysis.

The district court was also concerned that allowing the deduction would permit the taxpayer to offset the loss against his current ordinary income and postpone until a sale the payment of a capital gains tax.[10]

5.  Treas.Reg. § 1.165–7(a)(2)(ii) allows the replacement cost of damaged property as competent evidence of the amount of the casualty loss. It does not follow, however, that expenses for repairs actually must be incurred before the deduction is allowed. This alternative method of assessing the amount of the loss is not compulsory. *See, e. g.,* the treatment of this section in *Clapp v. Commissioner,* 321 F.2d 12 (9th Cir. 1963).

6.  The casualty loss deduction has been denied when only an insignificant use of the property is lost. *Citizens Bank of Weston v. Commissioner,* 252 F.2d 425 (4th Cir. 1958) (loss of basement area for storage purposes following a flood in basement, but with no damage to basement, was not a deductible casualty loss); *J. G. Boswell Co. v. Commissioner,* 302 F.2d 682 (9th Cir.) (evidence did not sustain taxpayer's contention that salts added by flood shortened the useful life of farm), *cert. denied,* 371 U.S. 860, 83 S.Ct. 118, 9 L.Ed.2d 99 (1962); *Richard A. Dow,* 16 T.C. 1230 (1951) (no deduction allowed for four-month contamination of well, even though new well was drilled). However, when the use of the property is significantly compromised by a casualty, a loss deduction is allowable. *J. G. Boswell Co. v. Commissioner,* 302 F.2d at 685, and cases collected there; *Citizens Bank of Weston v. Commissioner,* 252 F.2d at 428.

7.  *See* the district court's discussion of legislative history, 371 F.Supp. 1257, 1261 (N.D.Cal. 1973); *also,* B. Bittker & L. Stone, Federal Income, Estate & Gift Taxation 219 (4th ed. 1972).

8.  See note 4, *supra.*

9.  The exception to this statement is not germane in this case. The regulations provide that totally lost or destroyed business property would support a deduction of that property's adjusted basis, even if the fair market value was lower than the adjusted basis (i. e., the property had depreciated). Treas.Reg. § 1.165–7(b)(1) (last sentence).

10.  The casualty-loss deduction is an offset against ordinary income (to the extent not governed by Int.Rev.Code of 1954 § 1231). When the loss is recognized, the basis of the property must be adjusted downward by the amount of the deduction. Int.Rev.Code of 1954, § 1016(a)(1). Assuming that the eventual sale of the property gives rise to a capital gain, the capital gains tax will be imposed on the difference between the sales price and the adjusted basis, which, as noted, would have been reduced by the amount of the loss deduction. Therefore, the casualty-loss deduction gives rise to an ordinary deduction in the year of the loss, and the eventual recoupment would be taxed at capital-gains rates.

However, Congress has provided that casualty losses to business property are accorded an ordinary deduction even when the eventual disposition of the property may[11] be treated as a capital gain. Tax Reform Act of 1969, Pub.L. 91–172, § 516(b), 83 Stat. 487, 646, *amending* § 1231(a), Int.Rev.Code; S.Comm. on Finance, S.Rep.No.91–552, 91st Cong., 1st Sess., reprinted at 2 U.S.Code Cong. & Adm.News pp. 2239–41 (1970), and 6 CCH 1976 Stand.Fed. Tax Rep. ¶ 4725.022 at 54,008.

Interestingly, the government has not relied upon the opinion of the district court, but seeks affirmance of the result on three other theories:

1. *The Salt Water Intrusion Is Not a Casualty:* The parties stipulated that the loss was sudden, unusual, and unexpected—some of the characteristics of a casualty. *Matheson v. Commissioner,* 54 F.2d 537 (2d Cir. 1931); *Clinton H. Mitchell,* 42 T.C. 953 (1964). The government claims that a pre-existing defect in the geological formation caused the salt-water intrusion and that, therefore, it is not a casualty. Since this case was terminated by summary judgment, no factual decision has established this geological theory or any other theory to explain the actual cause of the salt-water intrusion. Whether or not it is a casualty involves a factual determination that should be made at trial. We express no opinion upon the government's theory that the intrusion was not a casualty.

■ 2. *No Property Interest in Oil in Place:* The government asserts, without citing authority, that taxpayers have no tangible property interest in the oil in place. The government's theory is that, because the salt-water intrusion damaged "uncaptured" oil in which taxpayers had no property interest, the taxpayers sustained no loss. In this, we believe that the government's theory of "no property interest in oil in place" is incorrect. Cal.Civ.Code § 658 states that real property includes "land", and § 659 defines land as the *material* of

the earth. A 1963 amendment to § 659 deleted the limiting modifier "*solid* material of the earth", which amendment implies that gas and oil should be included in the definition of real property.

The government also asserts broadly that "there is no judicial authority for a casualty loss deduction for a diminution in value of an intangible property right which results from damage to physical property owned by another." Even if we accept the government's argument that taxpayers did not own the oil in place (*i. e.,* that such oil is physical property owned by another), the governmental's research overlooked several examples of such judicial authority: *Stowers v. United States,* 169 F.Supp. 246 (S.D. Miss.1958) (diminution in value of property caused by a landslide which cut off street access to taxpayer's property was deductible as a casualty loss); *Collins v. United States,* 193 F.Supp. 602, 609 (D.Mass.1961), *rev'd on another issue,* 300 F.2d 821 (1st Cir. 1962) (vendee under an executory contract of property allowed a deduction when hurricane destroyed property and the vendee elected to forfeit deposit rather than close the sale); *Bliss v. Commissioner,* 256 F.2d 533 (2d Cir. 1958) (life tenant allowed deduction for casualty loss to farm); *L. L. Steinert,* 33 T.C. 447 (1959) (deduction allowed to life tenant for the diminution in value caused by hurricane).

3. *Allocation of Basis:* Finally, the government contends that the taxpayer's basis in the land should be allocated between the surface estate and the mineral estate. Treas.Reg. § 1.165–7(b)(2) directs that casualty-loss deductions be calculated "by reference to the single, identifiable property damaged or destroyed". The government asserts that, at the time of the purchase, the taxpayers subjectively valued the mineral rights at a low figure. The government now contends that the casualty-loss deduction should be limited to the subjective value, if any, given the mineral rights at the time of purchase.

---

**11.** Assumptions about future capital-gains treatment are premature. We need express no opinion upon the tax consequences of a sale of the acreage en gross or its subdivision and sale by lots.

Because the matter is here on an appeal from a summary judgment, the record on several issues is not as complete as it might be after a trial. The issues were not ruled upon below, and we have no occasion to rule upon them here. The allocation of basis, the difference between business and non-business property, the severability of mineral interests from the fee, the nature of a salt-water intrusion into an oil formation, and no doubt other issues will occupy the attention of the parties and of the trial court when the case is tried on the government's claim that the loss was not a casualty.

Vacated and remanded.