JOHN G. AND THERESA A. DANKOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dankos v. Commissioner
Docket No. 23041-84.
United States Tax Court
T.C. Memo 1986-498; 1986 Tax Ct. Memo LEXIS 111; 52 T.C.M. (CCH) 722; T.C.M. (RIA) 86498; September 30, 1986. Herman C. Daniel, for the petitioners. T. Keith Fogg, for the respondent. DRENNEN
MEMORANDUM *113 FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1979 in the amount of $56,627.42. After concessions [1] by petitioners, the issues remaining for our decision are: (1) whether petitioners are entitled to a deduction for a demolition loss; (2) whether petitioners are allowed a deduction for component depreciation; and (3) whether petitioners are entitled to deduct their payment of a note as guarantors of a business bad debt. This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts and joint exhibits are incorporated herein by this reference. Petitioners John G. and Theresa A. Dankos ("John and Theresa"), are husband and wife and resided in Richmond, Virginia at the time they filed their petition in this case. They filed their timely joint Federal *114 income tax return for the taxable year 1979 with the Internal Revenue Service Center in Memphis, Tennessee on July 13, 1980, pursuant to a valid extension. Petitioners are actively involved in the restaurant business. Petitioners formed Dankos Enterprises, Inc. (DEI), in 1962. DEI consists of seven Aunt Sarah's Pancake Houses, a Stanley Stegmeyer's Hodgepodge Restaurant, and two hotels, including a Ramada Inn and a Quality Inc. John is also actively involved with the National Restaurant Association, the Virginia Restaurant Association, and various civic groups. On January 31, 1975, petitioners and one Angelo W. Alexandri (Alexandri), contractually agreed to buy all the stock of The Clover Room, Inc. ("The Clover Room"), a Virginia corporation, from Andrew M. Lewis, Sydney Lewis, and Susan L. Butler. Sydney Lewis (Sydney), is a prominent Richmond, Virginia civic leader and a major stockholder along with one Francis A. Lewis (Francis), in Best Products, Inc., a nationally-known and publically-traded stock corporation which Francis and Sydney founded. Under this purchase agreement, The Clover Room obtained a five-year lease to a piece of property owned by Francis and Sydney located *115 at 4118 West Broad Street ("the property), Richmond, Virginia, which was an ice cream parlor and ice cream manufacturing facility. The lease included an option to purchase the property for $400,000, plus a yearly increase based on the Consumer Price Index. On May 31, 1975, petitioners and Alexandri executed a note payable to the order of Andrew M. Lewis, Sydney Lewis, and Susan L. Butler ("Andrew, Sydney, and Susan"), for The Clover Room stock. On January 1, 1977, petitioners sold their stock in The Clover Room to Alexandri, who assumed petitioners' liability on the note to Andrew, Sydney, and Susan. Petitioners formed Glen-Mark, Inc. ("Glen-Mark"), a Virginia corporation, as a wholly-owned subsidiary of DEI. The lease, and the purchase option held by The Clover Room were assigned to Glen-Mark. There was no formal written assignment of the lease and the purchase option to petitioners, either jointly or as individuals. Glen-Mark operated the 4118 West Broad Street property for several months with little financial success. The business was therefore closed for three months and remodeling begun in order to attract customers. In August 1977, Glen-Mark obtained a permit to tear *116 down some of the walls in the ice cream parlor. An architect was hired in early 1978 and plans were developed to completely remodel the ice cream parlor to create a restaurant called Stanley Stegmeyer's. A long obtained by Glen-Mark to renovate the 4118 West Broad Street property was partially secured by petitioners' personal assets. Michael Taylor (Taylor), is a CPA who has been employed by DEI since 1973. Taylor attested that it was part of petitioners' investment strategy to purchase property in their individual names and then to lease it to a corporation in which they own stock. [3]
Bruce L. Powell (Powell), vice president of Sovran Bank, stated that it was his understanding that petitioner would personally exercise his purchase option when the lease on the 4118 West Broad Street property expired. [4]
*117 During the renovation of the 4118 West Broad Street property into Stanley Stegmeyer's Restaurant, the contractor, Sobrito Construction Co., removed 95 percent of the existing heating and air conditioning system, 50 percent of the existing plumbing system, and 60 percent of the existing electrical system. On May 31, 1978, petitioners made a payment on the note to Andrew, Sydney, and Susan of $13,395.12, [5] even though petitioners considered Alexandri to be primarily liable on the note. Petitioners made the payment because they were aware that Alexandri and his wife were facing bankruptcy and, were in fact, adjudged bankrupt in the U.S. District Court for the Eastern District of Virginia on November 27, 1978, and because petitioners were liable as co-makers on the original note. On May 31, 1979, petitioners made an additional payment of $13,395.12. On November 17, 1979, Theresa exercised the option to purchase the 4118 West Broad Street property, and acquired legal title in her name. The option was never transferred to her in writing but was purportedly transferred informally. She paid nothing for the option. She reported *118 no gain from her exercise of the option. The purchase price for the property was the option price of $400,000 increased by $125,000 due to the Consumer Price Index inflation clause in the option agreement. At this time petitioners also made the last $13,395.12 payment due to Andrew, Sydney, and Susan. This payment was originally due on May 31, 1979, but was unpaid because Alexandri had defaulted on the note. Petitioners elected to utilize component depreciation on the 4118 West Broad Street property for the structure's roof cover, remaining heating and air conditioning system, and remaining plumbing and electrical systems. Petitioners utilized bases established by allocating costs to the percentages set by an appraiser as follows: Item
Percentage
Architect
6%
Site preparation
2 Structure
50 Heating and air-conditioning
15 Electrical
10 Plumbing
5 Sprinklers
2 Overhead and profit
10 On the depreciation schedule in their tax return for 1979 petitioners claimed cost of various components of 4118 Broad Street property as follows: Land
$150,000
Main Building
197,350
Roof
15,000 *Heat and Air Conditioning
56,250 *Plumbing
18,750 *Electrical
37,500
Paving
11,250
Fences
1,875
Landscaping
1,125
Bakery and Barber Shop
35,900
TOTAL
$525,000 *Heating and Air Conditioning was
reduced by 95% for "torn out"
$53,437 *Plumbing was reduced by 50% "torn out"
9,375 *Electrical was reduced by 60% "torn out"
22,500
TOTAL
$85,312
*119 These reductions were claimed as additional depreciation on petitioners' return. In the Notice of Deficiency respondent allocated the $525,000 purchase price paid by Theresa as follows: Building
$360,750
Paving
11,250
Fences
1,875
Landscaping
1,125
Land
150,000
TOTAL
$525,000
Glen-Mark paid for all demolition work performed at the 4118 West Broad Street property. These expenditures were reflected on a consolidated return filed by DEI. Glen-Mark paid and deducted the lease payments on The Clover Room made to Andrew, Sydney, and Susan up to November 17, 1979. Respondent disallowed $84,621 of the $87,938 deduction claimed on petitioners' deprecition schedule as a demolition loss resulting from the renovation of the 4118 West Broad Street property or as component depreciation thereon. Respondent also disallowed a business bad debt deduction of $13,395 claimed by petitioners due to their payment in 1979 of Alexandri's obligation on the note held by Andrew, Sydney, and Susan; respondent determined that it was a nonbusiness bad debt. [6]
*120 OPINION The first issue for our decision is whether petitioners are entitled to a demolition loss deduction for the renovation of the 4118 West Broad Street property or component depreciation with respect thereto. Respondent contends that petitioners are not allowed a demolition loss deduction under section 165[7] because petitioners did not own the property, had no basis in the property, did not pay for the demolition and renovation, and had no apparent connection with the property other than that they were shareholders of Glen-Mark. Moreover, respondent contends that petitioners' deduction is disallowed under section 1.165-3(a), Income Tax Regs., which provides that no demolition loss is deductible if the intent to demolish is formed prior to one's purchase. Respondent points out that here Glen-Mark had not only formed the intent to demolish prior to purchase, but had also completed the demolition prior to purchase. An additional reason for disallowing the deduction, respondent continues, is that petitioners had no basis in the demolished assets at the *121 time of demolition and therefore do not qualify for a deduction under section 1.165-3(b), Income Tax Regs.
Petitioners on the other hand contend that the demolition loss deduction should be allowed because Theresa was the equitable owner of the property at the time of the demolition since she held an option to purchase the property. Petitioners argue that the issue herein is a mere question of timing, that if Theresa had exercised the option and then had the property renovated the deduction would not be questioned. They argue that because she was the equitable owner of the property and held a legally enforceable option, the fact that she exercised the option after the renovation was completed should be treated no differently. Petitioners refer us to several cases where they argue that courts have allowed a demolition loss deduction to taxpayers who held less than full ownership in the property at issue or where their basis in the property was in dispute. For these reasons, petitioners conclude that their deduction should *122 be upheld. Section 165(a) allows a deduction for any loss sustained during a taxable year which is not compensated for by insurance or otherwise. Under section 165(b) the amount of the deduction for any loss is the adjusted basis of the property under section 1011. See section 1.165-1(c), Income Tax Regs. No deduction is allowed for the cost of buildings which are demolished when the property on which the buildings are situated is purchased with the intent of demolishing the buildings. Section 1.165-3(a)(1), Income Tax Regs.
To obtain a demolition loss deduction under section 165, petitioners must prove that they had a basis in the demolished assets. Section 165(b), I.R.C. See also Welch v. Helvering,290 U.S. 111, 115 (1933). We find that they have failed to carry their burden of proof. [8]
At the time the *123 renovation and partial demolition of the property at 4118 West Broad Street took place (from October 1977 until sometime in 1978), Glen-Mark, a corporation owned by DEI, held a lease with a purchase option on the property. The property was owned by Sydney and Francis. Petitioners themselves held no interest in the property. The purchase option was apparently informally transferred to Theresa who exercised it on November 17, 1979, to acquire legal title to the property in her name. [9]
Petitioners contend that they did have a basis in the property because when the option was transferred to Theresa she became the equitable owner of the property. The option gave Theresa a legally enforceable right to purchase the property, they argue. We agree that the option gave Theresa a right to purchase the property; however we do not agree that the option created a basis in the property for petitioners. Moreover, petitioners have presented no evidence as to when the option was actually transferred to Theresa. They contend that the option was transferred informally. Assuming arguendo that *124 Theresa held the option to purchase the property when the renovation occurred this still does not give her an ownership interest in the property. An owner is one who has a "totality of rights, powers, privileges and immunities" with respect to a piece of property. 1 Restatement, Property 2d, sec. 10 at 25 (1936). Theresa's option did not create for her an ownership interest in the property but rather gave her the legal right to purchase an ownership interest in the property. The distinction is significant. An option has been defined as "[a] right, which acts as a continuing offer, given for consideration, to purchase or buy property at an agreed upon price and terms, within a specified time." Black's Law Dictionary 986 (5th ed. 1979). We find that petitioners have failed to prove that they had an ownership interest or a basis in the property at issue and therefore deny their demolition loss deduction under section 165. [10]
*125 We also note that cases cited by petitioners in support of their contention are distinguishable. Petitioners argue that Collins v. United States,193 F. Supp. 602 (D. Mass. 1961), is authority that a taxpayer can deduct a loss where the taxpayer has no ownership interest in the property. In Collins, the taxpayer had contracted to buy real estate. Pursuant to the real estate contract the taxpayer held the risk of loss on the property from the date of execution of the contract. The court allowed the taxpayer a deduction under section 165 when the property was damaged by a hurricane. In contrast to the instant case, the taxpayer in Collins was legally bound to purchase the property at issue.He also held the risk of loss on the property and therefore would suffer financially if the property were damaged. Here, petitioners were not legally bound to purchase the property, to renovate it, or to pay for the renovation before the option was exercised. Cox v. Allen,537 F. 2d 1066 (9th Cir. 1976), is also distinguishable. In Cox, the taxpayer was allowed a deduction for damage to oil existing underground on land that he owned. The *126 taxpayer's basis in the oil was not established. Petitioners argue that Cox is authority that a deduction can be allowed where a taxpayer's basis is in dispute. We disagree. In Cox, the taxpayer was allowed a deduction because he owned the land, and therefore owned the oil on the land. As noted previously, petitioners herein have failed to establish an ownership interest or a basis in the property at issue. [11]
The next issue for our decision is whether petitioners are allowed component depreciation on the building shell and the components of the property at 4118 West Broad Street. Petitioners contend that component depreciation has been approved by the Internal Revenue Service and the courts as an acceptable method of depreciation as evidenced by Rev. Rul. 73-410, 1973-2 C.B. 53, and Lesser v. Commissioner,42 T.C. 688 (1964), affd. 352 F.2d 789 (9th Cir. 1965). *127 Respondent contends that in order to claim component depreciation, petitioners must prove that each of the separate components had a cost equal to the value placed on it in the return and that the component is likely to wear out in the period claimed as the useful life. Respondent argues that petitioners have failed to carry their burden of proof and therefore his determination should be sustained. Section 167 provides that there is allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business. Section 1.167(a)-7(a), Income Tax Rega. provides: Depreciable property may be accounted for by treating each individual item as an account, or by combining two or more assets in a single account. Assets may be grouped in an account in a variety of ways. For example, assets similar in kind with approximately the same useful lives may be grouped together. Such an account is commonly known as a group *128 account. Another appropriate grouping might consist of assets segregated according to use without regard to useful life, for example, machinery and equipment, furniture and fixtures, or transportation equipment. Such an account is commonly known as a classified account. A broader grouping, where assets are included in the same account regardless of their character or useful lives, is commonly referred to as a composite account. For example, all the assets used in a business may be included in a single account. Group, classified, or composite accounts may be further broken down on the basis of location, dates of acquisition, cost, character, use, etc. Accordingly, a building does not have to be depreciated by determining a composite life for the building as a whole. Shainberg v. Commissioner,33 T.C. 241 (1959). Costs of components of a building constructed for the taxpayer, such as building shells, roofs, floors, wiring, plumbing, ceiling, air conditioning, and other items may be placed in separate accounts and depreciated separately. This method of depreciation is often called component depreciation. *129 To qualify for component depreciation a taxpayer must prove the cost of each component and its useful life. See, e.g., Lesser v. Commissioner,supra at 703-705. Shainberg v. Commissioner,supra at 254. Respondent's determination is presumed correct and the burden rests with petitioners to show that respondent's determination is incorrect and that the depreciation deducted is reasonable. Pohlen v. Commissioner,165 F.2d 258 (5th Cir. 1948); Casey v. Commissioner,38 T.C. 357 (1962). Petitioners have not presented the evidence necessary to prove the values and useful lives of their components in order to obtain component depreciation. The only evidence offered by petitioners is a letter from an appraiser that is a purported breakdown of the costs attributable to the various commponents.[12] No evidence was presented concerning these costs, or concerning the make-up of the various components. In addition, no evidence was presented concerning how petitioners determined useful lives for the various components, or whether petitioners' determination of useful lives complies with the guidelines provided in *130 section 1.167(a)-1(b), Income Tax Regs.[13] Cf. Lesser v. Commissioner,supra;Shainberg v. Commissioner,supra;Harsh Investment Corp. v. United States, an unreported case ( D. Ore. 1970, 27 AFTR 2d 71-706, 71-707, 71-1 USTC par. 9183). The issue of an asset's useful life is one of fact but petitioners have offered no evidence to assist us in determining whether their factual determination was a correct one. Dielectic Materials Co. v. Commissioner,57 T.C. 587, 592 (1972). We therefore find that petitioners have failed to carry their burden of proof and we sustain respondent's determination. *131 The final issue for our decision is whether petitioners may deduct the amount of $26,790 paid in 1979 on the Lewis note as a business expense under section 162, or as a business debt under section 166. Petitioners and Alexandri purchased The Clover Room stock with a note executed to the order of Andrew Lewis, Sydney Lewis, and Susan Butler. Petitioners sold their stock in The Clover Room to Alexandri who assumed petitioners' liability on the note. However, petitioners remained liable on the note since Andrew, Sydney, and Susan did not release them from liability. When Alexandri defaulted on the note, payment was sought from petitioners, who then paid the installments due on the note. Petitioners were unable to recover their payment from Alexandri who was adjudged bankrupt. Petitioners contend that since they were unable to recover from Alexandri they should be allowed to deduct their loss either pursuant to section 1.166-8(a), Income Tax Regs., as a worthless debt, or under section 162 as an ordinary and necessary business expense. Petitioners contend that the expenditure was necessary to maintain their reputation as competent restauranteurs. *132 Respondent argues that petitioners may not deduct the loss as guarantors under section 166 because petitioners were not guarantors on the note but were rather primarily liable. Respondent further contends that petitioners should not be allowed to deduct the loss under section 162 because there is no evidence that the loss was proximately related to their trade or business as restauranteurs. For the reasons set forth below, we agree with respondent. Section 166(a)(1) allows as a deduction any debt which becomes worthless within the taxable year. Section 166(d)(1) provides that in the case of a taxpayer other than a corporation subsection (a) shall not apply to any non-business debts; rather a loss resulting therefrom should be considered a loss from the sale or exchange of a capital asset. Section 166(d)(2) defines a non-business bad debt as a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. *133 Section 1.166-8(a), Income Tax Regs., under which petitioners seek a deduction provides as follows: (a) NONCORPORATE OBLIGATIONS -- (1) DEDUCTIBLE AS BAD DEBT. A payment during the taxable year by a taxpayer other than a corporation in discharge of part or all of his obligation as a guarantor, endorser, or indemnitor of an obligation issued by a person other than a corporation shall, for purposes of section 166 and the regulations thereunder, be treated as a debt's becoming worthless within the taxable year, if -- (i) The proceeds of the obligation so issued have been used in the trade or business of the borrower, and (ii) The borrower's obligation to the person to whom the taxpayer's payment is made is worthless at the time of payment except for the existence of the guaranty, endorsement, or indemnity, whether or not such obligation has in fact become worthless within the taxable year in which payment is made. Petitioners contend that they were a guarantor of Alexandri's debt obligation and therefore qualify for a deduction under section 166 and section 1.166-8(a)(1), Income Tax Regs. *134 We do not agree. Petitioners and Alexandri executed a note to Andrew, Sydney, and Susan for The Clover Room stock. All three, petitioners and Alexandri, were primarily liable for the payment of the note. When petitioners sold their stock to Alexandri, he assumed petitioners' share of the note; however, Andrew, Sydney, and Susan did not release petitioners from liability on the note. Accordingly, petitioners remained primarily liable on the note and cannot be viewed as guarantors. Therefore, petitioners do not qualify for a deduction under section 166. Moreover, petitioners do not qualify for a deduction under section 162. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred by a taxpayer in carrying on a trade or business. Whether an expenditure is ordinary and necessary is a factual determination. Commissioner v. Heininger,320 U.S. 467 (1943); Chapman v. Commissioner,48 T.C. 358 (1967). Petitioners have the burden of overcoming respondent's determination. Welch v. Helvering,290 U.S. 111, 115 (1933). *135 In determining whether petitioners are entitled to a deduction under section 162 for the payment of another individual's debt, we must ascertain petitioners' motive for paying the debt and then determine whether that motive is sufficient to justify an ordinary and necessary business expense deduction. Lohrke v. Commissioner,48 T.C. 671, 688 (1967). Petitioners have offered no evidence of their motive, or primary purpose in making the payment. We decline to speculate as to their intentions. It is evident that petitioners felt it "necessary" to pay the note despite the fact that the debt was Alexandri's. We do not however believe that the payment was "ordinary." We do not find the essential proximate relationship between petitioners' payment of Alexandri's debt and petitioners' trade as restauranteurs. Cf. Martin v. Commissioner,25 T.C. 94 (1955). [14] Accordingly, respondent's determination denying petitioners' deduction is sustained.
Decision will be entered for respondent.
Footnotes
1. Petitioners concede an adjustment of $766 resulting from a decrease in allowable depreciation for Glen Allen property from $3,313 to $2,547. Petitioners also concede an adjustment disallowing $1,425 of the investment tax credit they claimed in 1979.↩
2. Tax Court Rules of Practice and Procedure.↩
3. Respondent has objected to the admission of this evidence on the grounds that it is irrelevant. We need not rule upon respondent's objection because we have upheld his determination despite the admission of this evidence.↩
4. Respondent has objected to the admission of this evidence on the grounds that it is irrelevant. We need not rule upon respondent's objection because we have upheld his determination despite the admission of this evidence.↩
5. This payment is not at issue in this case.↩
6. In the notice of deficiency, respondent disallowed a deduction of $13,395 as a business bad debt but allowed $26,790 as a nonbusiness bad debt.↩
7. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable year at issue.↩
8. See Orlando Three, Inc. v. Commissioner,T.C. Memo. 1983-79↩, a very similar case where the taxpayers also failed to prove a basis in the property at issue.
9. There is no evidence that the lease or the option was transferred to Theresa or anyone else.↩
10. We need not discuss respondent's alternative contention since we have reached our decision on other grounds. However, we do agree with respondent that section 1.165-3(a), Income Tax Regs., would also disallow petitioners' deduction. See Lesser v. Commissioner,42 T.C. 688, 705 (1964), affd. 352 F.2d 789↩ (9th Cir. 1965).
11. The record does not reflect exactly when the demolition-renovation was commenced or conducted; nor can we determine whether the components involved in the next issue were still in place or had been replaced or had simply been destroyed at the time Theresa bought the property.↩
12. Petitioners have simply allocated a portion of their purchase price ($525,000), to each of the components of the property acquired and then claimed, as a part of their depreciation deduction, the percentage of the cost allocated to a specific component that the contractor said was destroyed in the renovation. ↩
13. Section 1.167(a)-1(b), Income Tax Regs., Provides as follows: For the purpose of section 167↩ the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments.Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. * * * If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. * * *
14. See also Jenkins v. Commissioner,T.C. Memo. 1983-667↩.